IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

———————————————————x
NETSCAPE COMMUNICATIONS CORP.,   :
      :
      :
    Plaintiff,   :   Civil Action No. 1:09 CV 225
      :   TSE/TSE
  v.   :
      :
VALUECLICK, INC., MEDIAPLEX, INC.,   :
FASTCLICK, INC., COMMISSION JUNCTION,:
INC., MEZIMEDIA, INC. AND WEB CLIENTS,:
L.L.C.,   :
      :
    Defendant.   :
———————————————————x:


**DEFENDANTS' INITIAL *MARKMAN* BRIEF**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    THE '670 PATENT ......................................................................................................... 2

III.   THE '670 FILE HISTORY ............................................................................................. 5
       **A.**   Restriction Requirement ....................................................................................... 5
       **B.**   Reasons For Allowance ......................................................................................... 6

IV.    THE RULES OF CLAIM CONSTRUCTION ................................................................. 6

V.     THE PROPER CONSTRUCTION OF THE ASSERTED CLAIMS .............................. 8
       **A.**   Independent Claim 1 ............................................................................................. 8
              1.     Preamble ...................................................................................................... 9
              2.     Transition ................................................................................................... 10
              3.     Body ........................................................................................................... 10
                     a)     Requesting A File On Said Http Server From Said Http Client ............. 11
                     b)     Transmitting Said File From Said Http Server To Said Http Client ........ 14
                     c)     The Server Transmits the Requested Document with the State Object ..... 19
                     d)     Storing Said State Object On Said Http Client ....................................... 21
                     e)     Analysis of the Order of the Claimed Steps ........................................... 23
       **B.**   Independent Claims 9, 10 and 14 ......................................................................... 24
              1.     Claim 9 ....................................................................................................... 24
                     a)     Computer Readable Medium .................................................................. 24
                     b)     Executable Program Instructions ........................................................... 25
              2.     Claim 14 ..................................................................................................... 26
                     a)     Server ..................................................................................................... 26
       **C.**   Plaintiff's Proposed Constructions Of Individual Terms ..................................... 27
              1.     HTTP Client and HTTP Server ................................................................. 27
              2.     A File .......................................................................................................... 28

VI.    CONCLUSION ............................................................................................................. 29

# TABLE OF AUTHORITIES
## FEDERAL CASES

*ACCO Brands Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075 (Fed. Cir. 2003) ..............1, 14, 15

*Alloc Inc. v. International Trade Commission*, 342 F.3d 1361 (Fed. Cir. 2003)................................ 3, 4

*Bell Atlantic Network Services, Inc. v. Covad Communs. Group*, 262 F.3d 1258 (Fed. Cir. 2001) .................................................................................................................................. 3

*Combined System V. Defense Tech Corp. of America*, 350 F.3d 1207 (Fed. Cir. 2003)..................... 20

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ........................ 2, 7

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996)................................................................ 2

*NTP*, 418 F.3d at 1305 ............................................................................................................................ 5

*Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394 (Fed. Cir. 2008) .......................................................... 3, 7

*Netword, L.L.C. v. Centraal Corp.*, 242 F.3d 1347 (Fed. Cir. 2001) ..................................................... 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..........................................1, 2, 3, 7, 10, 23

*Power Mosfet Technologies LLC v. Siemens AG*, 378 F.3d 1396 (Fed. Cir. 2004)................................. 7

*Schering Corp. v. Amgen Inc.*, 222 F.3d 1347 (Fed. Cir. 2000) ............................................................ 2

*Toro Co. v. White Consolidated Industrial, Inc.*, 199 F.3d 1295 (Fed. Cir. 1999)............................. 2, 7

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .................................................. 3

## I.   INTRODUCTION

This is a patent case.  Plaintiff Netscape Communications Corp. ("Netscape") alleges that defendants ValueClick, Inc., Mediaplex, Inc., FastClick, Inc., Commission Junction, Inc., Mezimedia, Inc., and Web Clients, L.L.C., (collectively "defendants") are infringing U.S. Patent No. 5,774,670 ( "the '670 patent").  (See Ex. B of Declaration of David M. Sterling ("Sterling") attached as Ex. 1).  Defendants allege that they do not infringe, and that the '670 patent is invalid and unenforceable.

In *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996), the Court assigned responsibility for interpreting the claims of a patent solely upon the trial judge, who decides the scope and meaning of the claims as a matter of law. *Id.* The Court emphasized that the claims must be interpreted without regard to the issues of infringement and validity, and without regard to commercialized product or processes, whether they be the Plaintiff's or the Defendants'. *Id.*

In *Phillips v. AWH* Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), the Federal Circuit set forth explicit guidelines to be followed in connection with a *Markman* exercise.  Among them include:

- Unless defined in the patent, terms in the claim are give their "ordinary and customary meaning".
- The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.
- Claims are interpreted not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.
- The specification is the single best guide to the meaning of a disputed term.

The pre-briefing claim constructions proposed, respectively, by the Plaintiff and the Defendants, is a study in contrast. Defendants have proposed constructions for all relevant

terms recited in the claims, and for the entirety of the claims themselves. Plaintiff, by contrast, ducks the relevant inquires, refusing to propose constructions for more than a few selected, isolated words.   Stripped of pretense, the plaintiff's avoidance tactics are an overreaching attempt to have the court construe the '670 claims to cover technology that is neither described nor claimed in the '670 patent. The technology sought be ensnared by plaintiff involves post-patent developments that were never contemplated and certainly were never described or claimed by the patentee.

## II.    THE '670 PATENT

The '670 patent is directed to a network system for communicating documents. The documents are requested by a user/client. In turn, these requested documents are provided by a server. As the '670 patent explains: "[t]he system comprises a first computer (i.e., a server) capable of sending such documents over a network such as the InterNet. The system also has a second computer (i.e., a client) which can request these documents or files from the server." (Col 2, lns 24-28). This system is depicted below for a web environment:



2

While this type of system was well known in the art at the time the '670 patent was filed,[1] the patentee's alleged invention is directed to the second step, namely, when the server provides the client with the requested document, the server also provides the client with a state object. Providing a state object is depicted below:



Figure 4 of the '670 patent clearly illustrates the addition of a state object into the flow of information between a client and a server:

---

[1]   The '670 patent's description of the client-server architecture used in the Web environment is consistent with the state of the Web technology at the time the patent was filed. (*See* Sterling Dec. ¶¶2-4).



*FIG. 4*

The '670 patent explains the flow of information in Figure 4 as: (1) the Web client sends an http request to the Web server (172); (2) the Web server then responds to this request by sending the Web client the requested HTML document and state information (174)[2]; and (3) the Web client includes the state information when it sends future requests to the Web server (178). (col. 7, lns. 28-3). Similarly, figure 5 illustrates the same type of system, namely, the client sends a request for a document to a server and the server responds to the request by sending the client the requested document and state information.

Moreover, the "Summary of the Invention" section of the '670 patent describes a generic embodiment, namely, a network system for communicating documents. (col. 2, lns. 22-23). Claim 14 is directed to this embodiment. The "Summary of the Invention" section also describes a similar, but however, embodiment, namely, a network for communicating documents

---

[2]     The '670 specification uses the terms web pages, web documents and HTML documents interchangeably.  (Sterling ¶34).

using the HyperText Transfer Protocol ("HTTP"). (col. 2, lns. 36-41). Claims 1, 9, and 10 are directed to this embodiment.

Thus, at most, the '670 patent discloses two embodiments both of which are directed to communicating documents over a network. The section further describes two applications for the network for communicating documents using the HTTP protocol: (1) an on-line shopping system (col. 2, lns. 56-57) and (2) an on-line information subscription service (col. 2, ln. 66–col. 3, ln. 2).

## III.   THE '670 FILE HISTORY

### A.   Restriction Requirement

During prosecution of the '670 patent, the Examiner stated that the original '670 patent claims were directed to three different systems: (1) initiating a processing session by transferring a state object between computers; (2) subscribing to access a network server; and (3) displaying purchase information for various products and accepting a request to purchase a selected product. (Sterling Ex. C at 2). The Examiner requested that the claims of the '670 patent application be restricted or limited to one of the systems. *Id.* The patentee responded by selecting the claims directed to initiating a processing session and requesting cancellation of all other claims. (Sterling Ex. D).

The patentee's actions during the prosecution of the '670 patent make clear that, *inter alia*, the '670 patent claims are not directed to the on-line information subscription system. *See ACCO Brands Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003). Indeed, plaintiff filed a divisional application and received a separate and distinct patent (U.S. Patent 6,134,592) that was directed to the on-line information subscription system. (Ex. 2)

**B.      Reasons For Allowance**

In the "Notice of Allowability," dated November 26, 1997, the Examiner allowed the claims remaining after the restriction discussed above. The Notice of Allowability included the Examiner's "Reasons For Allowance" (Sterling Ex. E), which emphasized the patentee's disclosure in the original specification at page 17, line 11 through page 18, line 22 and shown in Figures 4-5. A comparison of the original specification and the '670 patent as issued reveals that the section of the '670 specification referred to by the examiner is column 7, lines 12-54. The Examiner's statements highlights the importance of Figures 4 and 5 and column 7, lines 12-54 when trying to understand the proper scope of the '670 patent claims.

## IV.     THE RULES OF CLAIM CONSTRUCTION

Claim terms are generally given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)."[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313; *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353-55 (Fed. Cir. 2000).

In determining the ordinary meaning, the analysis begins with the words of the claim. *Phillips*, 415 F.3d at 1312; *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Claims, however, are not construed in a vacuum. *Toro Co. v. White Consolidated Indus., Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999). Instead, claims are construed in light of the intrinsic evidence, including the language of the disputed claim, the other claims, the specification, and the prosecution history. *Id.* "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the

6

disputed term appears, but in the context of the entire patent, including the specification."
*Phillips*, 415 F.3d at 1313.

Even though a claim term may have a plain and ordinary meaning, "the specification or the prosecution history of a patent may alter the meaning of a claim term from its conventional usage." *Alloc Inc.*, 342 F.3d at 1368. Indeed, the Federal Circuit has emphasized the importance of the specification to claim construction, stating that "the specification is the single best guide to the meaning of a disputed term," and it "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Phillips*, 415 F.3d at 1321; *see Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1396-1400 (Fed. Cir. 2008) (rejecting proposed broad construction because the specification failed to describe the alternative alleged by the patentee to be within the scope of the claim).

Accordingly, in order for the Court to properly construe a claim term, the Court must determine whether the patentee has defined any of the claim terms in the specification. *Bell Atl. Network Servs., Inc. v. Covad Commus. Group*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). A claim term may be defined expressly, or implicitly by "consistently and clearly us[ing] a term in a manner either more or less expansive than its general usage in the relevant art, thereby expanding or limiting the scope of the term in the context of the patent claims." *Alloc Inc.*, 342 F.3d at 1368; *see also Bell Atl.*, 362 F.3d at 1271.

Courts may also consider extrinsic evidence, which includes all other evidence, such as expert testimony, dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1317; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Hence, "to determine claim meaning, a court immerses itself in the specification, the prior art, and other evidence, such as the understanding of skilled artisans at the time of invention, to discern the context and normal

usage of the words in the patent claim." *Alloc Inc. v. Int'l Trade Comm'n,* 342 F.3d 1361, 1368 (Fed. Cir. 2003).

## V.      THE PROPER CONSTRUCTION OF THE ASSERTED CLAIMS

Based on the parties' meet and confers, the claims that need to be construed are independent claims 1, 9, 10 and 14 of the '670 patent. These four independent claims include very similar elements. For example, claims 1, 9 and 14 all require that the client request a document from the server and claim 10 requires that the server receive a request for a document made by the client. Similarly, claims 1 and 10 both require that the server send the requested document to the client and claims 9 and 14 both require that the client receive the requested document from the server. Also, claims 1 and 10 both require that the server send state information to the client and claims 9 and 14 both require that the client receive state information from the server; and claims 1, 9 and 14 all require that the client store the state information on the server. Thus, the construction of claim 1 resolves the majority of the construction issues with respect to the other claims.[3]

### A.      Independent Claim 1

Claim 1, a method claim, is reproduced below:

| Preamble | A method of transferring state information between an http server and an http client, |
|---|---|
| Transition | said method comprising the steps of: |
| Body | requesting a file on said http server from said http client; transmitting said file from said http server to said http client; transmitting a state object from said http server to said http client; and |

---

[3]      The only other terms that appear to be in need of construction are: (1) computer readable medium; (2) executable program instructions; and (3) server. These terms are found in claims 9, 10 and 14 and will be addressed separately.

| | storing said state object on said http client. |
|---|---|

As shown above, claim 1 includes a preamble, a transition and a body.   The parties dispute only certain words in the body of claim 1.   The preamble and transition are construed, therefore, in accordance with applicable legal tenets and through the ordinary and accustomed meaning of the words.

### 1. Preamble

A preamble generally limits a claim if it recites essential structure or steps, or if it is necessary to give life, meaning and vitality to the claim." *NTP, Inc. v. .Research in Motion,* 418 F.3d 1282, 1305 (Fed. Cir. 2005). Here,  claim 1 performs both of those functions.

First, the preamble recites "an http server" and "an http client."  This is an identification of two essential structures that are subsequently recited, repeatedly, in the body of the claim.  The "http server" recited in the preamble is thereafter referred to four times in the body of claim 1 as "said http server," and the "http client" recited in the preamble is thereafter referred to three times in the body of claim 1 as "said http client."  When such limitations in the body of a claim refer back to and derive "antecedent basis" from the preamble the preamble acts as a limitation itself. NTP, 418 F.3d at 1305.

Second, the preamble gives life, meaning and vitality to claim 1 by explicitly reciting that the method involves transferring state information "between" the clearly identified http server and http client.  Context and hence meaning is provided by (1) identifying the essential structures and (2) defining the point-to-point nature of the transfer of state information "between" those essential structures.

The patentee has expressly defined the terms "client" and "server," as being based upon their respective roles in communication with each other.

See 2:36-41:

In an embodiment of the invention, the server uses a hypertext protocol ("http") to communicate over the network with clients; such clients also communicate with the server using the hypertext transfer protocol. This server and these clients are referred to as an http server and http clients respectively.

## 2. <u>Transition</u>

The transition of claim 1 recites "said method comprising the steps of." Reference to "said method," of course, refers to the same "method" recited in the preamble. "Comprising" is a legal term, generally meaning "including at least."

Thus, claim 1 requires performance of the method of the preamble defined by at least "the steps" recited in the body of claim 1.

## 3. <u>Body</u>

The body of claim 1 recites four manipulative steps, performed by specifically referenced structural elements.

In accordance with the applicable rules of claim construction, Defendants' proposed constructions of the four steps recited in the body of claim 1 focus on the complete language of each claim, construing the recited structural elements and manipulations in the context of what they are and how they interrelate. Additionally, Defendants construe claim 1 in view of the patent specification.

By contrast, Plaintiff does not construe the whole of the steps in context but rather construes isolated claim terms divorced from other terms and the claim as a whole the surrounding claim language. This is improper. The Federal Circuit has emphasized that claim construction always begins and ends with the language of the claim. *See e.g. Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Moreover, it is well

settled that a court should focus at the outset on how the patentee used the claim term in the claims and the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-16 (Fed. Cir. 2005). *See Netword, L.L.C.* v. *Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."); *Toro Co.* v. *White Consolidated Indus., Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) ("The claim word 'including' is not construed in a lexicographic vacuum, but in the context of the specification and drawings.").

Plaintiff, on the other hand, proposes not to construe the elements of claim 1, but rather, proposes that individual claim terms should be construed divorced from the surrounding claim language and specification. This is improper. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) ("the context in which a term is used in the asserted claim can be highly instructive"); *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1396-1400 (Fed. Cir. 2008) (construing the entire claim phrase, not just the disputed claim term); *Power Mosfet Technologies LLC v. Siemens AG*, 378 F.3d 1396, 1404 (Fed. Cir. 2004) (rejecting the "Special Master Report" because the claim terms "were construed in isolation").

### a) Requesting A File On Said Http Server From Said Http Client

The proper construction of the requesting step is: the process of a web user through a web browser requesting an HTML document from a web server. This construction is supported by the specification and drawings of the '670 patent. As discussed above, the specification makes clear that the alleged invention is directed to a network that uses the HTTP protocol to communicate documents between a client and a server. (col. 2, lns. 21-22). The specification states that: "[t]he system comprises a first computer (*i.e.*, a server) capable of sending such documents over a network such as the InterNet. The system also has a second

11

computer (*i.e.,* a client) which can request these documents or files form the server." (col. 2, lns. 24-27).

The specification also states that in a web environment "[w]eb Servers are coupled to the InterNet and respond to document requests from Web clients. Web clients (also known as Web 'browsers') are programs that allow a user to simply access Web documents located on Web Servers." (Col. 4, lns. 52-55); see also (col. 1, lns. 51-53).

Indeed, the specification repeatedly states that, in a web environment, web users request web or HTML documents from a web server using the HTTP communication protocol. See col. 5, ln. 67–col. 6, ln. 6 ("The Web browser then sends an http request to the server that has the Web document using the URL."); col. 10, lns. 25-26 ("[a] client system requests a Web document from the Web server"); col. 11, lns. 8-9 ("[a] client system then requests a Web document from the Web server"); col. 7, lns 30-33[4]: "the client system sends an http request to the Web server. In response to the http request, the server returns an HTML document".

Moreover, the drawings of the '670 patent further support Defendants' proposed construction. Figure 4, shows the requesting step, namely, the client sends a URL to the server and the server sending the requested HTML document back to the client. Significantly, the patentee characterized the request and transmission of the requested document and state object as illustrating "the flow of information between  a client and server **in accordance with the present invention.**" (col. 3, lns. 50-52, emphasis added).

---

[4]      Col. 12, lns. 15-18 ("Specifically, the browser software sends an http request for the home Web page of a merchant Web server (step 212). The merchant Web server responds to the request with an HTML document that is displayed by the browser (step 214)"). (Col. 12, lns. 15-16):

Similarly, Figure 5 at step 212 shows the user requesting an HTML document from the web or merchant server. At step 214, Figure 5 also shows the user receives and displays an HTML document. The patentee, once again, characterized the request and transmission of the requested document and state object as "a flow chart showing the operation of a merchant system of the present invention." (col. 3, lns. 53-54).[5]

In addition, as discussed above, the '670 patent must be construed in light of the time period in which it was filed. Here, the '670 patent was allegedly invented in 1994/1995 time frame. As Defendants' technical expert, David Sterling, explains, the web was very different than it is today. (Sterling ¶¶ 5-12). In fact, the web's primary purpose at that time was for sharing documents. (Sterling ¶ 5). Thus, based on the specification, drawings, and the state of the technology when the alleged invention was developed, one of ordinary skill in the art would understand the requesting phrase to refer to the process of a web user through a web browser requesting an HTML document from a web server.

Plaintiff has once again refused to propose a construction for the "requesting" step. Instead, plaintiff asks the Court to construe certain terms[6] in a vacuum and divorced from the surrounding claim language. This is improper. The Federal Circuit has explained that "the context in which a term is used in the asserted claim can be highly instructive". The Federal Circuit has explained that "the context in which a term is used in the asserted claim can be highly instructive". *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc); *Netcraft*, 549 at 1396-1400 (construing the entire claim phrase, not just the disputed claim term). By

---

[5]   The importance of figures 4 and 5 in understanding the alleged invention is reflected in the Examiner's Reasons for Allowance. (Sterling Ex. E at 2).

[6]   Plaintiff asks the Court to construe the following terms that are found within the requesting step: "http," "http client," "http server" and "file."

refusing to construe the requesting step, it appears that plaintiff is trying to divorce the construction of the claim language from the '670 specification and drawings. This it cannot do. Thus, based on the specification and drawing and the "state of the technology at the time the patent was filed, one of ordinary skill in the art would understand the requesting" step to mean the process of a web user through a web browser requesting an HTML document from a web server.[7]

### b) Transmitting Said File From Said Http Server To Said Http Client

The meaning of "said http server" and "said http client" is the same as discussed above. This construction is demanded by the language of claim 1 itself. The preamble of claim 1 and the steps that follow all consistently refer to only one http server and only one http client.

This construction is also supported by the specification of the '670 patent. As discussed above, the specification makes clear that the alleged invention is directed to a network for communicating documents between a client and a server. The specification also makes clear that in a web environment "[w]eb Servers are coupled to the InterNet and respond to document request from Web clients." (col. 4, lns. 52-54).

In fact, the specification repeatedly states that "said http server" refers to the <u>same</u> web server to which the web client made the request for an HTML document. *See* col. 7, lns. 30-32 ("the client system sends an http request to **the Web server**. In response to the http request, **the server** returns an HTML document.") (emphasis added); *see also* col. 1, lns. 55-57 ("A browser opens a connection to a server and initiates a request for a document. The server delivers the requested document"); col. 12, lns. 15-18.

---

[7]     Defendants' proposed construction applies equally to the "requesting" steps present in claims 9, 10 and 14, which, although worded slightly differently, have the same meaning. (Sterling ¶ 35).

Moreover, the drawings of the '670 patent further support Defendants' proposed construction. Figure 4, shows the transmitting step, namely, the server sending the requested HTML document back to the client. The patent specification, in describing figure 4, states that "In response to the http request, the server returns an HTML document". (col. 7, lns 31-32). Moreover, the importance of figure 4 in understanding the alleged invention, as well as column 7, lns. 12 - 54, is reflected in the Examiner's Reasons for Allowance.

Thus, based on the specification and drawings of the '670 patent, one of ordinary skill in the art would understand that "said http server" means the same web server from which the web user using a web browser requested the HTML document.

Importantly, as discussed above, the '670 patent must be construed in light of the time period in which it was filed. As Defendants' technical expert, David Sterling, explains, the web was very different than it is today. (Sterling ¶¶ 5-12). In fact, the client-server model used by the web (and, accordingly, used in the alleged invention) was based on a one-to-one relationship between a client and a server. (Sterling ¶¶ 10, 16-19, 26). Thus, the specification, drawings, and the state of the technology when the alleged invention was developed, all support Defendants' proposed construction.

The Court should thus construe the "transmitting" step to mean that the only server referred to in the claim transmits or sends to the only client referred to in the claim. The HTML document that was requested by that client. Defendant's construction is consistent with the context provided by the language of the claims, the specification and the drawings of the '670 patent and the state of the technology at the time the patent was filed, and, therefore, the

proper construction is that "said http server" means the same web server from which the web user using a web browser requested the HTML document.[8/]

Plaintiff has refused to propose a construction for the complete "transmitting" step. Instead, plaintiff asked the court to construe certain terms in a vacuum, divorced from the surrounding claim language, the specification, drawings and state of the technology at the time of the alleged invention. As explained above, this is improper. Transmitting A State Object From Said Http Server To Said Http Client

The second transmitting step of claim 1 requires the same server that transmitted the requested document to also transmit a state object. The preamble of claim 1 also refers to the term state information. The specification, however, explains that "[t]he term state object is also used herein to refer to the state information." (col. 7, lns. 26-27). Accordingly, the proper construction for both "state object" and "state information" is: information concerning the web server's condition or transition as a result of the web user/client's request.

This construction is supported by the specification of the '670 patent. The specification defines two types of state information: (1) state information concerning the server; and (2) state information concerning the client. The first type of state information (concerning the server) is described in the specification in connection with the on-line shopping application. See col. 2, lns. 60-65 ("[t]he server then sends state information related to the selected products to the browser on the client for storage. When the customer wants to purchase the products in the virtual shopping basket, the browser sends the corresponding state information to a specified

---

[8/]     Defendants' proposed construction applies equally to the "transmitting" steps present in claims 9, 10 and 14, which, although worded slightly differently, have the same meaning.

check-out Web page for processing.").[9] This type of state information, namely, the products that a user/client has selected to purchase, is state information concerning the condition of the server because it reflects the web server's condition with respect to a particular client's requests (i.e., to purchase certain products). (Sterling ¶¶ 20-25, 27, 49-50). Significantly, it is the client's requests that have affected the status of the server. As the specification language above explains, the information that is sent back to the web server is used by the server to resume the transaction and process the "check-out". As Defendants' technical expert, David Sterling, explains, this use of state information is consistent with the on-line shopping technology at the time of the alleged invention. (Sterling ¶¶ 20-25). In other words, this type of state information is needed by the server to know its status with respect to particular client in order to resume the transaction where it left off when the client returns.

The specification also very briefly describes using the state information to recover a user's preferences for a specific web site. See col. 7, lns. 52-54. Like the product information, this information is also state information concerning the server. These user/client preferences change the display of the web site and allow the server to resume and provide this display with respect to a particular client. Again, it is the client's requests that have affected the status on the web server.

The second type of state information (concerning the client) is described in the specification in connection with the on-line subscription service. See col. 3, lns. 8-12 ("the publisher's Web server [] responds with the requested publication and state information specifying the user's identification, and other subscription information (e.g., user registration and

---

[9]     This process of using the state information to save products on the server's web page that have been selected by the user/client is also illustrated in Figure 5 of the patent, which is described at column 12, line 28 through column 13, line 13.

billing information)"). The patentee, however, elected to restrict out the on-line subscription application from the '670 patent.

In these situations, the patentee is not permitted to expand the scope of the '670 patent claims based on the disclosure of an embodiment that was restricted out of the patent-in-suit. *See Acco Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003). In *Acco*, the Federal Circuit explained, "the presence of embodiments carried over from the parent application, but claimed in other patents, does not serve to broaden the scope of the [divisional patent's] claims that were not the subject of the divisional application." This is especially true here where the patentee later filed a divisional application (which issued as U.S. Patent No. 6,134,592) that is specifically directed to the on-line subscription service. (*See* Ex. 2, claim 1 at col. 14). In fact, claim 1 of the '592 patent is directed to state information about a user of client. (Ex. 2, col. 14, lns. 12-14).

Here, like *ACCO*, the patentee had another patent that was directed to the subject matter of the embodiments restricted out of the patent-in-suit and, therefore, any disclosure concerning the on-line subscription system cannot be used by plaintiff to broaden the scope of the claims. Consequently, the embodiment related to the on-line shopping application (i.e., that uses state information concerning the server) provides guidance as to the proper scope of claim 1.

Thus, based on the specification and file history, one of ordinary skill in the art would understand that the term "state information" means information concerning the web server's condition or transition as a result of the web user/client's request.

Plaintiff's proposes two separate definitions for the terms "state information" and "state object." By doing so, plaintiff ignores the specification of the '670 patent, which makes

clear that the terms "state object" and "state information" have the same meaning.[10] Moreover, plaintiff's proposed construction of the term "state information," namely, "information, such as a cookie, that specifies an identity, a characteristic, or a condition of a client and/or server," ignores the context provided by the patentee's use of the term in the '670 patent and impermissibly attempts to broaden the definition of the term to cover an embodiment that the patentee restricted out and pursued in a separate patent application. *See Acco Brands*, 346 F.3d at 1079.[11]

Furthermore, plaintiff's proposed construction that state information includes a "characteristic" of a client and/or server would impermissibly broaden the scope of the claim to include information not supported by the specification. For example, the specification does not provide any disclosure concerning state information that includes a "characteristic" of a server or client, or an "identity" of the server.[12]

### c) The Server Transmits the Requested Document with the State Object

The proper construction of the two transmitting steps is: the claimed "file" (i.e., HTML document) and state object/information are sent together to the Web user/client together. This construction is supported by the specification.

---

[10]    In addition, Plaintiff's proposed construction of the term "state object" should be rejected because it is ambiguous and provides no real guidance for a jury.

[11]    The first part of Plaintiff's construction, "information, such as a cookie" is circular and confusing, because the patentee, in the specification, explicitly defined a "cookie" as state information. *See* col. 7, lns. 18-19.

[12]    In addition, it is unclear as to what Plaintiff means by an "identity" or a "characteristic" of a client and/or server. As discussed above, clients and servers are computers and, as such, do not have identities or characteristics, except in the context of their physical appearance and whether or not they are switched on.

19

The specification makes clear that when the server sends the requested HTML document to the client, it also sends the state object. The specification states that: "the extension to the HTTP protocol adds a new piece of state information to the HTTP header **as part of an HTTP response** from a Web server." (Col. 7, lns. 60-63, emphasis added).[13]  The specification also states that: "[i]n response to an http request the server returns an HTML document **together** with a header, . . . [that] may contain one or more cookies." (Col. 7, lns. 30-36, emphasis added).

Defendants' construction is further supported by the fact that http servers are passive devices that can only respond to provide the requested information. See col. 1, lns 59-62 ("the server serves a passive role, *i.e.,* it accepts commands from the client and cannot request the client to perform any action"); col. 7, lns. 3-6 ("Thus, the only responsibility of a Web server is to provide the required document, and there is no need for the server to request a client to do anything else"). The passive nature of the server would prevent it from sending the state object separate from or independent of the requested document. (Sterling ¶¶ 40, 44). As Defendants' technical expert, David Sterling, explains, under the HTTP protocol, the server is limited to responding to document requests made by the client. (Sterling ¶¶ 10, 16, 40, and 44). Consequently, once the http server has transmitted the requested HTML document to the http client, the connection no longer exists between the http server and the http client.

Moreover, the patent drawings also support this construction. Figure 4 shows a single step (174) in which the "server returns an HTML document and cookies." Similarly, Figure 5 shows a single step (224) in which the Merchant Server sends the requested document

---

[13]   See also col. 2, lns. 30-32 ("in accordance with the present invention, the server can send state information to the client when a document is sent"); col. 12, lns. 43-47 ("[t]he server then generates a synthetic page and sends it to the browser running on the client sysem . . . . cookies containing information discussing the selected products are also sent at this time").

and cookies. Thus, the specification, drawings, and the state of the technology when the alleged invention was developed, all support Defendants' proposed construction. [14]

Plaintiff has yet again refused to propose a construction. As discussed above, plaintiff's refusal to propose a construction appears to be an improper attempt by plaintiff to divorce the construction of the claim language from the specification, drawings and state of the technology at the time of the allege invention.

### d) Storing Said State Object On Said Http Client

The proper construction of the storing step is: placing the state object/information in memory such that it can be sent back to the server from which the web user/client requested the HTML document.

This construction is supported by the specification of the '670 patent. The '670 patent makes clear that the purpose of the storing the state information is so that it could be transmitted along with future requests to the same web server. The specification states "a server can send state information to a client and the client stores the state information. The stored state information can later be sent back to the server at appropriate times." (col. 2 lns. 16-19). The specification also states "[t]he client then stores the state information. . . In a subsequent request for documents to the server, the client can send the stored state information to the server. (col. 2 lns. 32-35). The specification further explains that "[t]he server then sends state information related to the selected products to the browser on the client for storage . . . . the browser sends the corresponding state information to a specified check-out Web page for processing." (col. 2 lns.

---

[14]   Defendants' proposed construction applies equally to the "transmitting a state object" steps present in claims 1, 9, 10 and 14, which, although worded slightly differently, all have the same meaning.

32-35); see also col. 7, lns. 64-66 ("[t]he state information is stored by the receiving client system in the form of a 'cookie list' for later use."); col. 9, lns. 47-57.

Moreover, the patent drawings also support this construction. Figure 4 illustrates that the client "sends cookies" back to the server (178). (Col. 7, lns. 35-43). Figure 5 also illustrates that the client sends the cookies back to the Merchant Server for processing. (Col. 13, lns. 9-12).

As discussed above, the '670 patent must be construed in light of the time period in which it was filed and the understanding of one of ordinary skill in the art at that time. As Defendants' technical expert, David Sterling, explains, a web client cannot alter and has no reason to use the state information at any time, nor does the state information affect the client in any way. (Sterling ¶¶ 20-26, 49-53). In other words, in the alleged invention, only the Web server makes use of the state information (i.e., to recover information about its status in the transaction between the Web client and Web server). (Sterling ¶¶ 24-25, 49-53). Thus, to satisfy the objective of the '670 patent, the state information must be stored in a manner in which it can be reused or sent back to the same server that provided the state object.

Thus, based on the specification and drawings of the '670 patent, one of ordinary skill in the art would understand that the storing step means placing the state object/information in memory such that it can be sent back to the server from which the web user/client requested the HTML document.[15]

Yet again, plaintiff's refuses to provide a construction for the "storing" element. By refusing to construe the storing step, plaintiff once again tries to divorce the construction of the

---

[15]     Defendants' proposed construction applies equally to the "storing" steps present in claims 1, 9, and 14, which, although worded slightly differently, all have the same meaning.

claim language from the '670 specification and drawings and the state of the technology at the time the patent was filed.

### e) Analysis of the Order of the Claimed Steps

The steps of claim 1 clearly indicate that certain steps need to take place before other steps can take place. For example, the client requests a document or file from the server (the requesting step) and, in response, the server provides the requested document and a state object (the two transmitting steps). The client then stores the state object (the storing step). It is clear from the claim language that the client has to request a document before the server can provide the requested document to the client. The '670 specification also makes this clear, explaining that web servers are passive devices (col. 1, lns. 60-62), whose "only responsibility is to provide the requested document." Col. 7, lns. 3-4. Thus, the claim language patent specification makes clear that the claimed http server cannot transmit the requested document prior to receiving a request from the http client.

Moreover, the language of claim 1 makes clear that the http server transmits the state object to the client, prior to the client storing the state object. The '670 specification further confirms this construction of claim 1. For example, in the "Summary of the Invention" the patentee states "[i]n accordance with the present invention, the server can send state information to the client when a document is sent. The client then stores the state information." (col. 2, lns. 30-33; see also col. 2, lns. 16-19; col. 7, lns. 35-43).

Thus, the language of claim 1, as well as the specification, supports that claim 1 should be construed to require a specific order to the method steps namely, the "requesting" step occurs before the first "transmitting" step and the second transmitting step occurs before the storing step. Importantly, the Federal Circuit has explained that determining whether the steps of

a method claim must be performed in a particular order is a proper topic for claim construction. *See Combined Sys. V. Def. Tech Corp. of Am.*, 350 F.3d 1207, 1211-12 (Fed. Cir. 2003).

     Curiously, plaintiff never provided Defendants with a reason for why it would not agree to Defendants' proposed construction, rather, it merely stated that no further construction of the order of the steps is necessary. This is incorrect. The '670 patent specification and claim 1 clearly set forth a relationship between the client and server, which is illustrated by the order of the steps set forth in claim 1. Thus, the proper construction of claim 1 is that the requesting step happens prior to the first transmitting step and that the second transmitting step happens prior to storing step.

### B.    Independent Claims 9, 10 and 14

#### 1.  Claim 9

Claim 9, is a product claim, as set forth below, with emphasis added (bold) to identify the additional claim terms which are in dispute and, thus, require construction.

> A **computer readable medium** on an http client **containing executable program instructions** for performing a method comprising:
>
> [A]    requesting a file on a http server;
> [B]    receiving said file from said http server;
> [C]    receiving a state object which specifies state information from said http server; and
> [D]    storing said state object on said http client.

#### a)  Computer Readable Medium

The proper construction of computer readable medium is: a magnetic or optical mass storage device. This construction is supported by the specification of the '670 patent. The specification states that: "[t]he server typically will include . . . a computer readable medium, such as a magnetic ("hard disk") or optical mass storage device." (col. 2, lns. 41-44).

Plaintiff's construction, namely, that "computer readable medium" means memory, appears to exclude a hard disk and is therefore inconsistent with the above identified passage in the specification. One thing that is clear from both parties' constructions is that a computer readable medium is a physical structure and, therefore, claim 9 is an apparatus or product claim. See Declaration of Lawrence J. Goffney, Jr., Ex. 3 at ¶25. Thus, any construction of the term "computer readable medium" should include a magnetic or optical mass storage device.[16]

### b) Executable Program Instructions

The proper construction of executable program instructions is: object code (i.e., source code that has been compiled). This construction is supported by the specification of the '670 patent. The specification states "[t]he present invention may be implemented in software which is stored as executable instructions on a computer readable medium on the client and server systems" (col. 5, lns. 6-8). Thus, as the patentee explains, the executable program instructions represent software (e.g., the client browser), which is object code.[17]

Although plaintiff asserts that the Court should not construe this limitation, the ordinary juror is not likely to be familiar with this technical term, and therefore, an interpretation or explanation of the meaning of the phrase is appropriate. Based on the specification, one of

---

[16]   Defendants' proposed construction applies equally to the use of this term in product claims 10 and 14.

[17]   In order to run on a computer, software applications, such as browsers are stored as object code on a computer.

ordinary skill in the art would understand that executable program instructions refers to object code. (Sterling ¶ 10).[18]

## 2. Claim 14

Claim 14, is a system claim, as set forth below, with emphasis added to identify an additional claim term (bold) which is in dispute and, thus, requires construction.

A computer system, said computer system comprising:

[A]   a processor;
[B]   a memory coupled to said processor;
[C]   a computer readable medium coupled to said processor, said computer readable medium containing executable program instructions for:
    [1]   requesting a file on a **server**;
    [2]   receiving said file from said **server**;
[3]   receiving a state object which specifies state information from said **server**; and
[4]   storing said state object in one of said memory and said computer readable memory.

### a) Server

The proper construction of server is: a computer that communicates (i.e., provides documents) with a client over a network by using any communication protocol. This construction is supported by the specification of the '670 patent. The specification makes clear that the alleged invention is directed to a network for communicating documents between a client and a server. (col. 2, lns. 21-22).

Plaintiff's construction, namely, a provider of data, is unclear and fails to provide proper guidance in light of the clear statements in the '670 patent. The specification refers to the provider of data language to describe generally the roles of the client and server. (col 1, lns. 48-

---

[18]   Defendants' proposed construction applies equally to the use of this term in product claims 10 and 14.

51). The remainder of the specification and, in particular, the "Summary of the Invention" section makes clear that a client and server, in the '670 patent, communicate with each other over a network. Thus Defendants' proposed construction is more closely aligned to the disclosure of the '670 patent.

### C.     Plaintiff's Proposed Constructions Of Individual Terms

As discussed above, plaintiff improperly attempts to divorce the construction of the claim terms from the surrounding claim language and specification. *See Phillips,* 415 F.3d at 1315. Even if, *arguendo,* the Court believes that the construction of these claim terms is appropriate, then these terms should be construed in a manner that is consistent with the specification and the understanding of one of ordinary skill in the are at the time of the alleged invention.

### 1.   HTTP Client and HTTP Server

Plaintiff proposes to construe the term "http client" to mean "a requestor of data that uses http." (Ex. 4, Joint-Chart at 1). plaintiff's proposed construction appears to be based on a statement in column 1 of the '670 patent. (col. 1, ln. 50). Plaintiff's construction, however, fails to consider the very next sentence in the specification, which states "Under the Web environment Web browsers reside in clients and Web documents reside in servers. Web clients and Web servers communicate using a protocol called 'HyperText Transfer Protocol' (HTTP)." (col. 1, lns. 51-57). Moreover, and more importantly, the '670 patent defines the term "http client" as "[t]he system also has a second computer (i.e., a client) which can request these documents or files from the server . . . . such clients also communicate with the server using the hypertext transfer protocol. This server and these clients are referred to as an http server and http clients respectively." (Col. 2, at lns. 36-41). Thus, if the Court decides to construe the term "http client,"

the proper construction is a computer that communicates (i.e., requests HTML documents) with a server over a network by using the http protocol.

Similarly, plaintiff proposes to construe "http server" to mean "a provider of data that uses http." This proposed construction is flawed for the same reasons discussed above. Indeed, the specification also defines the term "http server" as: [t]he system comprises a first computer (i.e., a server) capable of sending such documents over a network such as the InterNet. . . . the server uses a hypertext transfer protocol ("http") to communicate over the network with clients. . . . This server and these clients are referred to as an http server and http clients respectively." (col. 2, lns. 25-41). Accordingly, if the Court decides to construe the term "http server," the proper construction is a computer that communicates (i.e., provides HTML documents that have been requested) with a client over a network by using the http protocol. [19]

## 2. A File

Plaintiff proposes to construe the term file to mean "information, such as data or a program, associated with an identifier or name." Ex. 4. This construction completely ignores the specification and construes the term in a way that is inconsistent with the state of the technology at the time of the invention. As discussed above in detail, the specification is replete with statements that make it clear that the alleged invention was directed to a network for communicating documents or files.[20]

---

[19]    The patentee provided an explicit definition of the term "http". See col. 1, lns. 53-55 ("Web clients and Web servers communicate using a protocol called 'HyperText Transfer Protocol' (HTTP)").

[20]    Importantly, the specification and claims use the terms "document" and "file" interchangeably. See e.g., col. 2, lns. 26-28 ("[t]he system also has a second computer (*i.e.,* a client) which can request these documents or files form the server."). For example, claim 5, which depends from claim 1 uses the word document where claim 1 originally used the word file. The patentee did the same thing in claims 17, 22 and 25.

Moreover, as Defendants' technical expert, David Sterling, explains, the web was very different at the time of the alleged invention than it is today. (Sterling ¶¶ 5-12). In fact, the web's primary purpose at that time was for sharing documents. (Sterling ¶ 5). More specifically, the web clients and web servers could only communicate by making requests for and sending requested HTML documents respectively. (Sterling ¶¶ 16, 44). Thus, if the Court decides to construe the term "file," then its proper construction for the web based claims (i.e., claims 1, 9 and 10) is an HTML document.[21]

## VI.   CONCLUSION

Defendants respectfully request that the Court adopt their proposed constructions.

---

[21]   For claim 14, which does not require an HTTP server or client the proper construction for the term "file" is a document.

29

Dated:  July 16, 2009                    Respectfully submitted,

                                         _____/s/ Amy S. Owen_____
                                         Amy S. Owen (VSB # 27692)
                                         aowen@cochranowen.com
                                         Sheila M. Costin (VSB # 31452)
                                         scostin@cochranowen.com
                                         Cochran & Owen LLC
                                         8000 Towers Crescent Drive
                                         Suite 160
                                         Vienna, VA 22182
                                         Ph: (703) 847-4480
                                         Fx: (703) 847-4499

                                         Lawrence G. Kurland
                                         Joseph J. Richetti
                                         BRYAN CAVE, LLP
                                         1290 Avenue of the Americas
                                         New York, New York 10104
                                         Tel: (212) 541-2000
                                         Fax: (212) 541-4630

                                         Attorneys for Defendant
                                         VALUECLICK, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

Defendants' *Markman* Brief was served this 16th day of July, 2009 via electronic filing with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following e-mail address:

> Robert L. Burns (VSB # 65159)
> Umar Arshad (VSB #74638)
> FINNEGAN HENDERSON FARABOW
> GARRETT & DUNNER, L.L.P.
> Two Freedom Square
> 11955 Freedom Dr.
> Reston, VA 20190
> robert.burns@finnegan.com
> Tel: (571) 203-2700
> Fax: (202) 408-4400
>
> Gerald F. Ivey (DCB #367009)
> C. Gregory Gramenopoulos (VSB #38633)
> John M. Williamson (DCB #472713)
> FINNEGAN HENDERSON FARABOW
> GARRETT & DUNNER, L.L.P.
> 901 New York Ave., NW
> Washington, DC 20001
> Tel: (202) 408-4282
> Fax: (202) 408-4400

Counsel for Netscape Communications Corp.

                              /s/ Sheila M. Costin