# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

NETSCAPE COMMUNICATIONS CORP.,    )
    )
        Plaintiff,    )    Civil Action No. 1:09-cv-225-TSE-TRJ
    )
v.    )
    )
VALUECLICK, INC., MEDIAPLEX, INC.,    )
FASTCLICK, INC., COMMISSION    )
JUNCTION, INC., MEZIMEDIA, INC.,    )
and WEB CLIENTS, L.L.C.,    )
    )
        Defendants.    )

## PLAINTIFF NETSCAPE COMMUNICATION CORP.'S
## OPENING CLAIM CONSTRUCTION BRIEF

Robert L. Burns (VSB # 65159)
Umar Arshad (VSB #74638)
Nicholas J. Nugent (VSB # 77141)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571)-203-2700
Fax: (202) 408-4400

Gerald F. Ivey (DCB #367009)
C. Gregory Gramenopoulos (VSB #38633)
John M. Williamson (DCB #472713)
C. Brandon Rash (VSB #72248)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000
Fax: (202) 408-4400
**Attorneys for Plaintiff**
**Netscape Communications Corp.**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................1

II.   THE '670 PATENT .......................................................................................................1

   A.   Overview of Patented Technology .........................................................................1

   B.   Summary of Prosecution History...........................................................................4

III.  GENERAL LEGAL PRINCIPLES FOR CLAIM CONSTRUCTION ...............................5

IV.   ANALYSIS OF DISPUTED TERMS AND PROPOSED CONSTRUCTIONS ..................7

   A.   Disputed Claim Terms............................................................................................7

        1.   "http" ............................................................................................................7

        2.   "http server" and "server" ...........................................................................9

        3.   "http client" ...............................................................................................11

        4.   "state object" .............................................................................................13

        5.   "state information" .....................................................................................16

        6.   "file"...........................................................................................................18

        7.   "computer readable medium" and "executable program instructions"............20

   B.   Defendants' Additional Proposed Constructions for the Steps Recited in
        the Asserted Claims ..............................................................................................22

        1.   The Specific Steps of Claim 1....................................................................22

        2.   "requesting a file" and "receiving a request for a file" ......................................24

        3.   "transmitting said file" and "receiving said file" ..............................................26

        4.   "transmitting a state object" and "receiving a state object"..............................27

        5.   "storing said state object".........................................................................29

V.    CONCLUSION .............................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003) ............... 10

*Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003) ............................................ 5, 23

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008) .............................. 23

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308 (Fed. Cir. 2000) ................. 14

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002) ................... 18

*Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331 (Fed. Cir. 2008) ................................. 6, 8

*Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 24 F.3d 1048 (Fed. Cir. 1994) .................. 6

*Erbe Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028 (Fed. Cir. 2009) .............. 6, 8

*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ................... 23

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352 (Fed. Cir. 2002) ......................... 10

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998)................................................ 6, 19

*Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049 (Fed. Cir. 2009).............................. 11

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ............................. 6, 9, 17

*Oatey Co. v. IPS Corp.*, 514 F.3d 1271 (Fed. Cir. 2008)............................................................ 17

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................. 5, 6, 7, 29

*Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841 (Fed. Cir. 2006) ........................... 14, 17

*Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304 (Fed. Cir. 2001) ..................................... 27

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225 (Fed. Cir. 2001) ............... 6, 19, 29

*z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340 (Fed. Cir. 2007)............................................ 14

## I.      INTRODUCTION

Plaintiff Netscape Communications Corp. ("Netscape") presents this memorandum pursuant to the Court's Rule 16(b) Scheduling Order in support of its proposed constructions for claims of U.S. Patent No. 5,774,670 ("the '670 patent," attached as Exhibit A).  To facilitate the Court's consideration of the claim construction issues, a Joint List of Disputed Terms and Proposed Constructions is attached as Exhibit B.  The asserted claims of the '670 patent include claims 1-10 and 14-26, which cover Netscape's groundbreaking technology concerning "cookies" (a form of state information) for the Internet and World-Wide-Web.

## II.     THE '670 PATENT

### A.      Overview of Patented Technology

The '670 patent is directed to methods and apparatuses for transferring state information between a client computer system and a server computer system.  Ex. A, '670 patent, Abstract. The terms "client" and "server" refer to a computer's general role as "a requestor of data (the client) or a provider of data (the server)."  *Id.*, col. 1, ll. 49-51.  According to embodiments of the invention, a server can send state information—such as a "cookie"—to a client, the client stores the state information, and the stored state information can be sent back to the server at a later time.  *Id.*, col. 2, ll. 14-18, 24-25.  In this way, the state of a client can be maintained in a client-server system where no state inherently exists.  *Id.*, col. 2, ll. 18-20.

The World-Wide-Web ("the Web") on the Internet is one example of a stateless system. *Id.*, col. 1, ll. 29-30, col. 2, ll. 6-7.  In the Web environment, browsers reside on clients, and various forms of files reside on servers.  *Id.*, col. 1, ll. 51-53.  Figure 1A in the '670 patent, reproduced below, illustrates a computer network, such as the Internet, comprising clients (e.g., computers 102, 104, 106, 108, 110, and 112) and servers (e.g., servers A and B).  *Id.*, col. 4, ll. 17-18.



FIG. 1A

*Id.*, Fig. 1A.  A client, such as computer 102, may request a file from server A through a local area network, or a client such as computer 102 may request a file from server B through the Internet.  *Id.*, col. 4, ll. 36-45.  Data may be transferred through several intermediate servers and other routing devices in traversing the network.  *Id.*, col. 4, ll. 47-49.

In certain embodiments of the invention, the servers and clients use the Hypertext Transfer Protocol ("http") to communicate with each other.  *Id.*, col. 2, ll. 36-39.  In a typical interaction, a client requests a file, and the server delivers the requested file.  *Id.*, col. 1, ll. 55-57.  During this interaction, the server serves a passive role, i.e., it accepts commands from the client and cannot request the client to perform any action.  *Id.*, col. 1, col. 60-62.  Figure 2 of the '670 patent illustrates the retrieval of files related to a Web page by a client computer.  *See id.*, col. 6, ll. 12-13; Fig. 2.

The client sends requests for files to the server, and the server responds by sending the requested files to the client.  *Id.*, col. 5, l. 66 - col. 6, l. 4.  The file transmitted to the client may be a plain text document that is written in HyperText Markup Language (HTML) located on a single server, or the requested files may include information, e.g., text and images, located on

multiple servers, as shown in Figure 2.  *Id.*, col. 6, ll. 12-20 & Fig. 2.  In Figure 2, server A contains a text document coded in a standard HTML format, server B contains an image file called Image 1, and server C contains another image file called image 2.  *Id.*, col. 6, ll. 13-16; Fig. 2.  Each of the servers may be remotely located from the other servers and the client.  *Id.*, col. 6, ll. 16-17.

In conventional stateless environments such as the Web, there is no "memory" of client-server interactions.  For example, prior to the patented technology, http clients did not retain information of a session after the session was closed.  *Id.*, col. 2, ll. 6-8.  Embodiments of the claimed invention, however, allow the client to have the ability to retain information after the system becomes inactive.  *Id.*, col. 2, ll. 7-11.  In one embodiment, the client sends an http request to the server, the server returns the requested file together with a header that may contain one or more "cookies," and the client stores the cookies in a memory.  *See, e.g.*, *id.*, col. 7, ll. 28-38; Fig. 4.  At a later time, the client may send subsequent http requests to a server specified by one or more stored cookies and, when doing so, return the cookies to the server.  *Id.*, col. 7, ll. 38-44; Fig. 4.

The new syntax of the state object or data specifying the cookie is, in one embodiment, "Set-Cookie: NAME=VALUE; expires=DATE; path=PATH; domain=DOMAIN_NAME; secure."  *Id.*, col. 7, l. 66 - col. 8, l. 3.  In this embodiment, the "NAME=VALUE" attribute is the only required attribute of the "Set-Cookie" data structure and serves to identify a cookie.  *Id.*, col. 8, ll. 4-8.

The patented technology of the '670 patent can be used in various applications.  An on-line shopping system is one such example, where a customer can browse information on servers about available products.  *Id.*, col. 2, ll. 56-57, col. 11, ll. 52-53.  The customer can place a

3

desired product into a "virtual shopping basket," which causes the server to send state

information related to the selected products for storage on the client. *Id.*, col. 11, ll. 53-57.

When the customer wants to purchase the selected products, the client can then transmit the

corresponding state information—such as a cookie—to a check-out Web page for processing.

*Id.*, col. 2, ll. 62-65.

Another application for the patented technology involves an on-line information service,

such as a newspaper's Web server, requiring a user subscription. *Id.*, col. 2, l. 66 - col. 3, l. 2.  A

user may request a publication and send the necessary subscription information, such as a user

identification, to the server, and the server responds with the requested publication and state

information specifying the user's identification and other subscription information, such as a user

registration and billing information. *Id.*, col. 3, ll. 5-11.  Thereafter, the state information

including the user identification is exchanged between the client and the server, and the user is

able to view additional publications without having to re-enter the necessary subscription

information. *Id.*, col. 3, ll. 14-23.

### B.     Summary of Prosecution History

The '670 patent is based on application that was filed on October 6, 1995.  Ex. C, File

History, Ser. No. 08/540,342, Patent Application, at 1 (Oct. 6, 1995).  The application was filed

with original claims 1-36.  *Id.* at 33-41.  Original claims 1-8, 12-17, and 19-30 are identical to

corresponding claims 1-26 in the issued patent.  *Id.*

Following an examination of the prior art, the Examiner found the claims so unique that

he issued the claims without a formal rejection.  The Notice of Allowance states in part that

"[t]he prior art of record does not teach or suggest transmitting a state object from a server to a

client station wherein the state object comprises a "cookie" which functions within the HTTP

browser environment in the manner disclosed and enabled in the specification at page 17, line 11

through page 18, line 22 and shown in Figures 4-5." Ex. D, File History, Ser. No. 08/540,342,

Notice of Allowance, at 1-2 (Nov. 26, 1997).

## III.     GENERAL LEGAL PRINCIPLES FOR CLAIM CONSTRUCTION

Generally, claim terms are given their "ordinary and customary meaning," after

considering "the context of the entire patent, including its specification." *Phillips v. AWH Corp.*,

415 F.3d 1303, 1312, 1326 (Fed. Cir. 2005) (citation omitted); *see also Altiris, Inc. v. Symantec*

*Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (there is a "heavy presumption" that claim terms

carry their ordinary and customary meaning).   "[T]the ordinary and customary meaning of a

claim term is the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention, i.e., as of the effective filing date of the patent application."

*Phillips*, 415 F.3d at 1313.

"In some cases, the ordinary meaning of claim language as understood by a person of

skill in the art may be readily apparent even to lay judges, and claim construction in such cases

involves little more than the application of the widely accepted meaning of commonly

understood words." *Id.* at 1314.   "In such circumstances, general purpose dictionaries may be

helpful." *Id.*   However, "[b]ecause the meaning of a claim term as understood by persons of skill

in the art is often not immediately apparent, and because patentees frequently use terms

idiosyncratically, the court looks to . . . 'the words of the claims themselves, the remainder of the

specification, the prosecution history, and extrinsic evidence concerning relevant scientific

principles, the meaning of technical terms, and the state of the art.'" *Id.* (citation omitted).

To begin with, "the claims themselves provide substantial guidance as to the meaning of

particular claim terms." *Id.*   Moreover, "[o]ther claims of the patent in question, both asserted

and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim

term." *Id.*   Additionally, the specification has been characterized as the "single best guide to the

meaning of a disputed term" and is usually "dispositive." *Id.* at 1315 (citation omitted). Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (citation omitted); *see also Erbe Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1034 (Fed. Cir. 2009) ("We generally do not construe claim language to be inconsistent with the clear language of the specification; [u]sually, it is dispositive." (quotation marks omitted)); *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1339 (Fed. Cir. 2008) (finding a construction that was "internally inconsistent and contradictory to the rest of the patent" to be erroneous); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1294-97 (Fed. Cir. 2005) (rejecting a construction that "contradicts the text and figures of the written description").

On the other hand, "[a]lthough claims must be read in light of the specification of which they are a part, it is improper read limitations from the written description into a claim." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1237 (Fed. Cir. 2001); *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[A] court may not import limitations from the written description into the claims."). "[I]t is the claims, not the written description, which define the scope of the patent right." *Latraim Corp.*, 163 F.3d at 1347; *see also Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 24 F.3d 1048, 1054 (Fed. Cir. 1994) ("[C]laims are not to be interpreted by adding limitations appearing only in the specification.").

Next, the Court should also consider the patent's prosecution history. *Phillips*, 415 F.3d at 1317. Lastly, the Court may consider extrinsic evidence, which can shed useful light on the relevant art, but it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Id.* (citation omitted). However, "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by

the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'"  *Id.* at 1318 (citation omitted).

## IV.    ANALYSIS OF DISPUTED TERMS AND PROPOSED CONSTRUCTIONS

### A.    Disputed Claim Terms

There are nine specific claim terms in dispute: "http," "http server," "server," "http client," "state object," "state information," "file," "computer readable medium," and "executable program instructions."  Each are addressed below.

### 1.    "http"

| Term | Netscape's Construction | Defendants' Construction[1] |
|------|-------------------------|----------------------------|
| http | HyperText Transfer Protocol, a stateless communications protocol | a stateless protocol that allows web users/clients and websites/servers to communicate with each other |

Independent claims 1, 9, and 10 recite the term "http" in connection with the claimed "http server" and "http client."  The parties agree that "http" is a stateless protocol for communications.  The parties disagree, however, as to the precise construction of this term.

Netscape's proposed construction addresses both the meaning of the abbreviation "http" and the type of protocol that "http" is related to.  Netscape's construction is fully supported by the '670 patent.  *See, e.g.*, Ex. A, '670 patent, col. 2, ll. 36-39 ("In an embodiment of the invention, the server uses a hypertext transfer protocol ("http") to communicate over the network with clients; such clients also communicate with the server using the hypertext transfer protocol."); col. 1, ll. 53-55 ("Web clients and Web servers communicate using a protocol called 'HyperText Transfer Protocol' (HTTP).").  The fact that "http" is a *stateless communication protocol* is also described in the patent (*see, e.g., id.*, col. 2, ll. 6-20) and is acknowledged by the

---

[1] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 1, 3-4 (July 9, 2009).

Defendants, both as a part of their proposed construction of "http" and by their other submissions in this suit (*see* Ex. E, Defs.' ValueClick, Inc. and Fastclick, Inc.'s Prelim. Invalidity and Non-Infringement Disclosures ("Defs.' Invalidity Disclosures"), at 8 (June 10, 2009) ("[T]he HTTP/1.0 specification was one of a number of stateless communication protocols.")).

Despite the intrinsic evidence, Defendants seek a construction of "http" that requires a "stateless protocol that allows web users/clients and websites/servers to communicate with each other." The terms "web user/clients" and "websites/servers" are ambiguous and improper, and would themselves require separate construction. Moreover, Defendants' own proposed constructions of "http client," "http server," and "server" do not refer to or include a "web user" or "websites." Indeed, neither the claims nor the specification support the Defendants' proposal and the proper construction of "http" is certainly not limited to entities or concepts such as a "web user" or "website." As a result, not only is Defendants' construction inconsistent with its other constructions, but it is inconsistent with the '670 patent. *See Erbe Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1034 (Fed. Cir. 2009) ("We generally do not construe claim language to be inconsistent with the clear language of the specification; [u]sually, it is dispositive." (quotation marks omitted)); *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1339 (Fed. Cir. 2008) (finding a construction that was "internally inconsistent and contradictory to the rest of the patent" to be erroneous); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1294-97 (Fed. Cir. 2005) (rejecting a construction that "contradicts the text and figures of the written description").

Moreover, Defendants' construction ignores the reality that "http" is a well-known acronym for the proper name "HyperText Transfer Protocol," even though their papers and expert reports admit this reality. *See* Ex. E, Defs.' Invalidity Disclosures, at 11 ("hypertext

transfer protocol (HTTP)"); Ex. F, Expert Report of Frederick W. Scholl, at 5 (July 6, 2009)

("Hypertext Transfer Protocol (HTTP)"); Ex. G, Expert Report of John C. Klensin, at 5 (June 27,

2009) ("hypertext transfer protocol (HTTP)").

In view of the foregoing, "http" should be construed consistent with the intrinsic evidence

and Netscape's proposal; that is, "HyperText Transfer Protocol, a stateless communications

protocol."

### 2. "http server" and "server"

| Term | Netscape's Construction | Defendants' Construction[2] |
|------|------------------------|---------------------------|
| http server | a provider of data that uses http | a computer that communicates (i.e., provides HTML documents that have been requested) with a client over a network by using the http protocol |
| server | a provider of data | a computer that communicates (i.e., provides documents) with a client over a network by using any communication protocol |

The term "http server" appears in claims 1, 9, and 10, whereas the term "server" appears

in claim 14 of the '670 patent.

Consistent with the intrinsic evidence, "server" means "a provider of data," and "http

server" means "a provider of data that uses http." In particular, the specification of the '670

patent specifically defines "server" to mean a "provider of data." *See* Ex. A, '670 patent, col. 4,

ll. 27-29 ("In this specification, the terms 'client' and 'server' are used to refer to a computer's

general role as a requester of data (client) or provider of data (server)."). *Jack Guttman, Inc. v.*

*Kopykake Enters., Inc.*, 302 F.3d 1352, 1360 (Fed. Cir. 2002) ("Where, as here, the patentee has

clearly defined a claim term, that definition usually . . . is dispositive; it is the single best guide to

the meaning of a disputed term." (quotation marks omitted)); *accord 3M Innovative Props. Co. v.*

---

[2] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 1, 3-5.

*Avery Dennison Corp.*, 350 F.3d 1365, 1374 (Fed. Cir. 2003).  In addition, consistent with the intrinsic evidence and definitions provided in the patent, a "http server" is properly construed to mean "a provider of data that uses http."  *See* Ex. A, '670 patent, col. 2, ll. 36-41 ("In an embodiment of the invention, the server uses a hypertext transfer protocol ("http") to communicate over the network with clients; such clients also communicate with the server using the hypertext transfer protocol.  This server and these clients are referred to as an http server and http clients respectively.").

Defendants stray from the simple and specific definitions given in the specification and offer constructions that are ambiguous, confusing, and legally untenable.  Defendants' constructions are ambiguous and confusing with respect to the references to, for example, "HTML documents" (or "documents"), "a client," and "a network."  Such terms, as part of a construction, have no foundation in the context of other claim language (e.g., claims 1, 9, 10, and 14 do not reference or require any form of a "network").  Defendants' constructions also conflict with other claim terms (e.g., claims 1, 9, and 10 refer to a "file" and a "http client" but not "HTML documents" or a "client"; claim 14 refers to a "file" but not "documents," a "client," or "any communications protocol").  Further, Defendants' construction of "http server" is particularly confusing when, for example, "http" is replaced by Defendants' proposed construction for that term—"a computer that communicates (i.e., provides HTML documents that have been requested) with a client over a network by using the [a stateless protocol that allows web users/clients and websites/servers to communicate with each other] protocol."  Defendants' constructions are also inconsistent in that they limit "http server" to providing documents "that have been requested," but apply no such limitation to "server."

10

Most significantly, Defendants' constructions are legally untenable because they contradict the explicit definitions provided in the specification and attempt to import unnecessary limitations into the claims. *See Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1054 (Fed. Cir. 2009). For example, as indicated above, Defendants' proposals limit "server" to a computer that "provides documents" and limit "http server" to a computer that "provides HTML documents that have been requested." These constructions are contrary to the definitions provided in the '670 patent. *See* Ex. A, '670 patent, col. 4, ll. 27-29. Moreover, while the server may deliver a file that is "typically in the form of a text document coded in a standard Hypertext Markup Language (HTML)," *id.*, col. 1, ll. 53-59, there is no requirement that the server must or only "provide[] HTML documents." Such an interpretation is, therefore, contrary to the embodiments provided in the specification. For instance, Fig. 2 of the '670 patent shows servers that each provide requested image files. *See id.*, '670 patent, Fig. 1, col. 6, ll. 12-20.

Accordingly, Netscape's constructions for "http server" and "server" should be adopted by the Court.

### 3. "http client"

| Term | Netscape's Construction | Defendants' Construction[3] |
|------|------------------------|---------------------------|
| http client | a requestor of data that uses http | a computer that communicates (i.e., requests HTML documents) with a server over a network by using the http protocol |

The term "http client" is recited in independent claims 1, 9, and 10 of the '670 patent. As with "http server," Netscape proposes a construction that is consistent with the intrinsic evidence, including the explicit definitions provided in the specification.

---

[3] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 1, 3-4.

Netscape's proposal for "http client" is "a requestor of data that uses http." This construction takes into account the definition for "client" that is provided in the specification of the '670 patent. *See* Ex. A, '670 patent, col. 4, ll. 27-29 ("In this specification, the terms 'client' and 'server' are used to refer to a computer's general role as a requester of data (client) or provider of data (server)."). It also takes into account that the "client" is specifically a "http client" and, therefore, a "client" that uses http. Again, this construction is consistent with the intrinsic evidence and definitions provided in the patent. *See id.*, col. 2, ll. 36-41 ("In an embodiment of the invention, the server uses a hypertext transfer protocol ("http") to communicate over the network with clients; such clients also communicate with the server using the hypertext transfer protocol. This server and these clients are referred to as an http server and http clients respectively.").

Defendants' proposed construction for "http client" suffers from similar deficiencies as identified above for their proposed construction for "http server." Specifically, Defendants' proposed construction of "http client" strays from the explicit definitions provided in the specification and advances a construction that is both ambiguous and confusing, including with respect to the references to, for example, "HTML documents," "a server," and "a network." Such terms, as part of a construction, have no foundation in the context of the claim language (e.g., claims 1, 9, and 10 do not reference or require any form of a "network"). Defendants' construction also conflicts with other claim terms (e.g., claims 1, 9, and 10 refer to a "file" and a "http server" but not "HTML documents" or a "server"). Further, as with "http server," Defendants' construction of "http client" is confusing when, for example, "http" is replaced by Defendants' proposed construction for that term—"a computer that communicates (i.e., requests

12

HTML documents) with a server over a network by using the [a stateless protocol that allows web users/clients and websites/servers to communicate with each other] protocol."

Moreover, Defendants' construction contradicts the explicit definitions provided in the specification and attempts to import unnecessary limitations into the claims. For instance, as indicated above, Defendants' proposal limits a "http client" to "a computer that . . . requests HTML documents." This limitation is contrary to the specification, which provides that a client can request various types of documents or files from a server. *See, e.g.*, Ex. A, '670 patent, col. 2, ll. 26-27; col. 6, ll. 12-18 (describing a client computer 130 that requests an image from server B and another image from server C); col. 12, ll. 10-49 (describing various forms of requested files, including text, images, video clips, and synthetic pages). Accordingly, Defendants' construction for "http client" is contrary to the intrinsic evidence and should be rejected.

In view of the intrinsic evidence and explicit definitions, Netscape's proposed construction for "http client" is proper and should be adopted.

### 4. "state object"

| Term | Netscape's Construction | Defendants' Construction[4] |
|---|---|---|
| state object | data having a predetermined structure that specifies state information | State object is the same as state information |

The dispute between the parties over the term "state object," which appears in claims 1, 9, 10, and 14, centers on whether the term means the same thing as "state information" or something different. A proper and full examination of the intrinsic evidence establishes that, while the terms may overlap conceptually, "state object" and "state information" have different meanings in the context of the asserted claims.

---

[4] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 1, 3-5.

Federal Circuit law shows that when different words are used in the same claim, especially within the same clause of a claim, a rebuttable presumption applies that a different meaning was intended, and therefore, a different meaning should be applied to the different words.  *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

Here, the claims themselves use the terms in a manner that supports that the terms are not synonymous and require two separate constructions.   For example, claims 9, 10, and 14 refer to "a state object which specifies state information."[5]  This alone establishes that the "state object" is something separate and apart from the "state information" (i.e., it is something that specifies state information).  *See z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1348 (Fed. Cir. 2007) (ruling that where a claim separately recited the terms "user" and "computer," the district court's construction permitting a "user" to be a computer was erroneous); *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("Starting with the language of claim 21, the terms 'engaging' and 'sealing' are both expressly recited in the claim and therefore 'engaging' cannot mean the same thing as 'sealing'; if it did, one of the terms would be superfluous.") Similarly, the specification provides that "the state information . . . is typically in the form of a state object" and "the state object . . . specifies the state information."  Ex. A, '670 patent, col. 2, ll. 32-33, 52.

While the specification also states that "state object is also used herein to refer to the state information," *id.*, col. 7, ll. 26-27, the specification uses state object to refer to state information

---

[5] Although claim 1 refers to "state information," it does not explicitly include the same language for "state object" as provided in claims 9, 10, and 14.  In view of the intrinsic evidence, however, Netscape contends that "state object" should be construed consistently in all asserted claims.

in certain portions of the specification for simplicity and clarity, not to give those words the same meaning in all contexts.  Conceptually, "state object" can be used to refer to "state information" because, as stated above, "the state information . . . is typically in the form of a state object" and "the state object . . . specifies the state information." *Id.*, col. 2,  ll. 32-33, 52.  However, while certain portions of the specification may use "state object" to refer to "state information" in certain contexts, the terms are not synonymous, and the specification of the '670 patent clearly sets forth that the "state object" is data that specifies state information, where the data is organized according to a predetermined syntax or structure.

More specifically, the specification provides that "[t]he client . . . stores the state information, which is in the form of a state object," *id.*, col. 2, ll. 32-33, and "the client contains computer program instructions for receiving the state object, which specifies the state information, from the server and for storing the state object at the client." *Id.*, col. 2,  ll. 50-53.  Thus, a state object is "data having a predetermined structure that specifies state information." In one embodiment, "the state information is referred to as a 'cookie'." *Id.*, col. 2, ll. 17-18.  The specification gives one example of "[t]he syntax of the new data" associated with a cookie which, consistent with Netscape's proposal, comprises "data having a predetermined structure" (e.g., "Set-Cookie:  NAME=VALUE; expires=DATE; path=PATH; domain=DOMAIN_NAME; secure").  *Id.*, col. 7, l. 64 - col. 8, l. 3.  For cookies returned by a client, the specification also provides another example of the syntax of the data for a state object (e.g., "Cookie: NAME1=value1; NAME2=value2; . . .").  *Id.*, col. 9, ll. 54-58.

Accordingly, in view of the foregoing, the Court should adopt Netscape's construction of "state object" and reject Defendants' attempt to give state object and state information the same meaning.

### 5.     "state information"

| Term | Netscape's Construction | Defendants' Construction[6] |
|------|------------------------|---------------------------|
| state information | information, such as a cookie, that specifies an identity, a characteristic, or a condition of a client and/or a server | information concerning the web server's condition or transition as a result of the web user/client's request |

Netscape proposes that "state information," as it appears in all asserted claims including claims 1, 9, 10, and 14, means "information, such as a cookie, that specifies an identity, a characteristic, or a condition of a client and/or a server."  Netscape's proposal is consistent with the intrinsic evidence related to the '670 patent and should be adopted by the Court.

As noted above, a state object "specifies the state information."  Ex. A, '670 patent, col. 2, l. 52; claims 9, 10, and 14.  In the context of the '670 patent, "state information" refers to or specifies an identity, a characteristic, or a condition of a client and/or server, several examples of which are provided in the specification.  For example, in one embodiment involving an on-line shopping system, the server "sends state information related to selected products to the browser on the client for storage."  *Id.*, col. 2, ll. 60-62.  The specification also discloses "state information specifying the user's identification, and other subscription information (e.g., user registration and billing information)" in the context of an on-line information service.  *Id.*, col. 3, ll. 9-11.  In addition, the specification explains with respect to certain embodiments associated with HTTP:

> Using the teachings of the present invention, when a server responds to an
> http request by returning an HTTP object to a client, the server may also
> send a piece of state information that the client system will store. In an
> embodiment of the present invention, the state information is referred to as
> a "cookie". Included in the state information (the cookie) is a description
> of a range of URLs for which that state information should be repeated
> back to. Thus, when the client system sends future HTTP requests to

---

[6] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 1, 3-5.

> servers that fall within the range of defined URLs, the requests will
> include a transmittal of the current value of the state object. By adding the
> ability to transfer state information back and forth, Web servers can then
> play an active role in transactions between clients and servers.

*Id.*, col. 7, ll. 13-26.

Thus, consistent with Netscape's proposal, the specification identifies several embodiments where state information, such as a "cookie," specifies an identity, a characteristic, or a condition of a client and/or a server.

Defendants propose that "state information" means "information concerning the web server's condition or transition as a result of the web user/client's request."  As with other constructions advanced by Defendants, their construction of "state information" is inconsistent with the specification and unnecessarily limits that term to specific embodiments in the patent. For example, Defendants' proposed construction focuses on the "server's condition or transition" but ignores the possibility of any state information concerning the identity, characteristic, or condition of a client.  Such a position is legally flawed as it ignores the client-specific embodiments presented in the specification for "state information."  *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."); *Primos, Inc.*, 451 F.3d at 848 (rejecting accused infringer's claim construction argument since that construction was contrary to the patent figures and would read out a preferred embodiment); *NTP, Inc.*, 418 F.3d at 1294-97.

For the above reasons, the Court should reject Defendants' proposal and adopt Netscape's proposed construction for "state information" as being "information, such as a cookie, that specifies an identity, a characteristic, or a condition of a client and/or a server."

6.      "file"

| Term | Netscape's Construction | Defendants' Construction[7] |
|------|------------------------|---------------------------|
| file | information, such as data or a program, associated with an identifier or name | an HTML document |

The term "file" appears in independent claims 1, 9, 10, and 14.  Netscape initially proposed to Defendants that the term did not require any construction.  Defendants, however, elected to unnecessarily limit the proposed construction of the term, as with other claim terms, in attempt to support their non-infringement positions.  Because Defendants' position is contrary to the intrinsic evidence and plain meaning of the term, Netscape alternatively submits that the meaning of the disputed term should be resolved by the Court.   As further detailed below, "file" means "information, such as data or a program, associated with an identifier or name."  This construction is consistent with the plain meaning of the term and the intrinsic evidence.

In the context of the claims, a "file" is requested by the http client and transmitted by the http server.  As described in the specification, "[i]n one embodiment of the method, an http client requests a file, *such as* an HTML document, on an http server, and the http server transmits the file to the http client."  Ex. A, '670 patent, Abstract (emphasis added).  *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 811 (Fed. Cir. 2002) (ruling that district court erred in limiting a claim limitation reciting "located at predesignated sites *such as* consumer stores" to consumer stores since the term "such as" implied one example of a broader group).  The specification also refers to files as "Web documents."  *See* Ex. A, '670 patent, col. 4, ll. 36-55. In the context of a "file," the specification also describes "the retrieval of remote text and images and their integration in a Web page by a client computer."  *Id.*, col. 6, ll. 12-13; *see also* Fig. 2, col. 6, ll. 14-20 ("In FIG. 2, server A contains a text document coded in a standard HTML

_____

[7] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 1, 4-5.

format.  Server B contains an image file called Image 1 and server C contain another image file

called Image 2.  Each of these servers is remotely located from the other servers and the client

130. . . .  [T]he text and image files could be located on the same server . . . .").  In relation to the

embodiment of Figure 5, the specification also discloses various other forms of files, such as

text, images, sound, video clips, and synthetic pages. *Id.*, Fig. 5, col. 12, ll. 10-48.

Contrary to Defendants' proposal, nowhere does the specification limit the term "file" to

an HTML document.  Moreover, there is no intrinsic evidence that would support limiting the

term to only one of the several embodiments presented in the patent.  *See Laitram Corp. v. NEC

Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[A] court may not import limitations from the

written description into the claims."); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d

1225, 1237 (Fed. Cir. 2001) ("Although claims must be read in light of the specification of

which they are a part, it is improper to read limitations from the written description into a

claim.").  Accordingly, the term "file" should be construed as: "information, such as data or a

program, associated with an identifier or name."

Netscape's proposal is consistent not only with the intrinsic evidence, but is also

consistent with the plain and ordinary meaning of the term—which does not limit "file" to a

"HTML document."  *See* Ex. H, IEEE Standard Dictionary of Electrical and Electronics Terms,

at 405 (6th Ed. 1996) ("file (1) (computers)": "A collection of related records treated as a unit";

"file (3) (information transfer)": "One named collection of data"); Ex. I, Dictionary of Computer

Words, at 102-03 (rev. ed. 1995) ("file": "A collection of data or information that is stored as a

unit in the computer under a single name, called the *file name*.  Files are the basic units that a

computer works with in storing and retrieving data."); Ex. J, Douglas A. Downing et al.,

Dictionary of Computer Terms, at 117 (4th ed. 1995) ("file": "a block of information stored on a

19

disk, tape, or similar media.  A file may contain a program, a document, or a collection of data (such as a mailing list).").

### 7.    "computer readable medium" and "executable program instructions"

| Term | Netscape's Construction | Defendants' Construction[8] |
|---|---|---|
| computer readable medium | memory | a magnetic or optical mass storage device |
| executable program instructions | No construction of "executable program instructions" is necessary. | object code (i.e., source code that has been compiled) |

With respect to the terms "computer readable medium" and "executable program instructions," which appears in claims 9, 10, and 14, Netscape submits that these terms are well known in the art and do not need construction by the Court.  Defendants' proposed constructions, however, attempt to limit the terms to specific examples or embodiments.  In particular, Defendants' proposal for "computer readable medium" improperly attempts to limit the term to specific exemplary embodiments presented in the patent.  To address this dispute, Netscape proposes, as an alternative, the plain and ordinary meaning of the term which is "memory," a construction that is consistent with the intrinsic evidence.  For the term "executable program instructions," Netscape submits that the term or phrase is self explanatory and maintains that it does not require any construction.  Defendants' proposal, on the other hand, is ambiguous and will raise confusion, particularly with respect to the introduction of highly technical terms, such as "object code," "source code," and "compiled."

Consistent with Netscape's proposal, the proper construction of the term "computer readable medium" is "memory."  This is because the specification of the '670 patent does not limit the term to any specific form of memory.  In fact, "a magnetic or optical mass storage

---

[8] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 3-5.

device" is only provided in the specification as an exemplary embodiment of a computer readable medium or memory. *See* Ex. A, '670 patent, col. 2, ll. 41-50 ("The server typically will include . . . a computer readable medium, *such as* a magnetic ("hard disk") or optical mass storage device, . . . . The client typically will include . . . a computer readable medium, *such as* a magnetic or optical mass storage device, . . . ." (emphasis added)). Other forms of memory, such as "mass storage devices," are provided as examples for a computer readable medium. *See id.*, col. 5, ll. 5-10.

In their other proposed constructions, Defendants have also conceded that a "computer readable medium" is a "memory." Specifically, in connection with Defendants' proposal to construe the "storing" step in claim 14, Defendants have acknowledged that a "computer readable medium" is essentially "memory." *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2, 6 (construing "storing said state object *in one of said memory and said computer readable medium*" to mean "placing the state object/information *in memory* such that it can be sent back to the server from which the web user/client requested the HTML document" (emphasis added)).

With respect to "executable program instructions," Netscape submits that this term is self explanatory and does not require construction by the Court. The Defendants' attempt to construe the term is legally flawed in that their proposed construction has no support or foundation in the intrinsic evidence. For example, the specification does not limit the term to "object code (i.e., source code that has been compiled)." Rather, the specification describes the term more broadly:

> In one embodiment, the apparatus includes a processor and
> memory and a computer readable medium which stores program
> instructions. In the case of the client systems, the instructions
> specify operations such as receiving and storing the state
> information; in the case of the server system, the instructions

> specify operations such as sending the state information to a client system.

*Id.*, Abstract; *see also id.*, col. 2, ll. 41-53.  There is nothing in the specification referencing "object code," "source code," or any type of code that has been "compiled."  Rather, the specification contemplates that "executable program instructions" could be any code or instructions that are executable by a computer.  Thus, while an example of "executable program instructions" may include "object code (i.e., source code that has been compiled)," the Court should reject Defendants' attempt to rewrite the claims.

**B.     Defendants' Additional Proposed Constructions for the Steps Recited in the Asserted Claims**

Netscape submits that the only disputed terms that the Court should consider are the nine individual terms outlined above.  Defendants, however, contend that the overall steps of the independent claims and the order of the steps recited in claim 1 require additional and separate construction by the Court.  Netscape submits that such constructions are unnecessary and improper for the following reasons.

**1.      The Specific Steps of Claim 1**

| Term | Netscape's Construction | Defendants' Construction[9] |
|---|---|---|
| the specific steps of claim 1 | No construction of the order of the steps of claim 1 is necessary. | The method steps of claim 1 should be construed in a particular order because each subsequent step references something logically indicating that the prior step has been performed.  For example, the "requesting" step takes place before the "transmitting" step and the "storing" step occurs after the "transmitting" step. |

The parties dispute whether the specific steps recited in claim 1 require a separate construction to specify that they must be performed in a particular order.

---

[9] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2.

Generally, the steps of a claim should not be construed in any particular order unless the claim language indicates a particular order. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one.").

The Federal Circuit has explained:

> *Interactive Gift* recites a two-part test for determining if the steps of a method claim that do not otherwise recite an order, must nonetheless be performed in the order in which they are written. First, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written. . . . If not, we next look to the rest of the specification to determine whether *it* "directly or implicitly requires such a narrow construction." If not, the sequence in which such steps are written is not a requirement.

*Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003) (omitting citations); *see also Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) ("[A]lthough a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to the performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order.").

Netscape submits that a specific construction of the order of the steps of claim 1 is not necessary, as any required order between individual steps in claim 1 would be readily understood based on the intrinsic evidence (e.g., based on the claim language and usage of "said" to refer to previously recited terms).  In contrast, Defendants' proposal is vague and open-ended, and, if adopted, would introduce uncertainty as to the construction of the steps of claim 1.  Specifically, Defendant's proposal  makes a general statement about a "particular order" but then advances a proposed order of certain steps under a sentence introduced by the phrase, "For example."  In addition, as part of  their proposal, Defendants ambiguously refer to "the 'requesting' step" occurring before "the 'transmitting' step" and "the 'storing' step" occurring after "the

23

'transmitting' step." Defendants' construction twice refers to "the 'transmitting' step" even though claim 1 has two separate transmitting steps: "transmitting said file . . ." and "transmitting a state object . . ."

The ambiguity of Defendants' proposal is further compounded when viewed in combination with Defendants' other claim construction proposals for claim 1. In particular, Defendants are apparently arguing that the "transmitting" steps of claim 1 are one step,[10] which is contrary to the claims and the specification, as further explained below. Furthermore, Defendants do not propose that any of the steps recited in claims 9, 10, or 14 should be read in a particular order. There is no basis for such an inconsistent construction of the claims and, moreover, this evidences that the construction of the order of the steps for any of the asserted claims is not necessary.

### 2. "requesting a file" and "receiving a request for a file"

| Term | Netscape's Construction | Defendants' Construction[11] |
|---|---|---|
| Claim 1: requesting a file on said http server from said http client<br><br>Claim 9: requesting a file on a http server<br><br>Claim 10: receiving a request for a file on said http server from an http client | No further construction of the "requesting a file" steps of claims 1, 9, and 14 or the "receiving a request for a file" step of claim 10 is necessary in view of the construction of the disputed terms above. | a web user/client requests an HTML document on a web server |

---

[10] With respect to the "transmitting a state object" step in claim 1, Defendants contend that this step means that "the claimed 'file' (i.e., HTML document) *and* state object are sent to the web user/client *together*." Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2 (emphasis added). However, this is contrary to the intrinsic evidence, including a separate step of claim 1 for "transmitting said file." *See infra.* Part IV.B.3.

[11] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2-4, 6.

| Claim 14: requesting a file on a server | | |
| --- | --- | --- |

Netscape submits that the "requesting a file" steps of claims 1, 9, and 14 and the "receiving a request for a file" step of claim 10 do not require separate constructions.  These steps include the individual disputed terms outlined above, such as "file," "http," "http server," http client," and "server."  Once the Court properly construes these terms, the "requesting a file" and "receiving a request for a file" steps do not require any separate constructions, as the remaining language in these steps (e.g., "requesting" and "receiving a request") have a plain and common understanding.

Despite the constructions proposed for the individual terms, Defendants additionally seek Court to construe the overall meaning of the "requesting a file" and "receiving a request for a file" steps of the claims.  There is no basis for this.  Defendants' proposal for these steps, as recited in four different claims, is the same construction: "a web user/client requests an HTML document on a web server."  However, none of the claims refer to or require a "web user" or a "HTML document" and, as indicated above, such a construction is contrary to the intrinsic evidence.  In addition to importing unnecessary terms into the claims, the construction advanced by Defendants eviscerates certain terms of the claim (e.g., Defendants' proposal ignores the language of claim 10, which specifically requires "*receiving* a request for file").  Such an approach is legally untenable.

Defendants construction also conflicts with its apparent attempt to resolve any additional meaning from the overall language of each step.  In particular, Defendants implicitly concede that the term "requesting" does *not* need construction because they use the root of the word ("requests") in their own proposed construction.

In view of the foregoing, the Court should adopt Netscape's proposal and decline to construe the "requesting a file" and "receiving a request for a file" steps.

### 3.    "transmitting said file" and "receiving said file"

| Term | Netscape's Construction | Defendants' Construction[12] |
|---|---|---|
| Claims 1 and 10: transmitting said file from said http server to said http client<br><br>Claim 9: receiving said file from said http server<br><br>Claim 14: receiving said file from said server | No further construction of the "transmitting said file" step of claims 1 and 10 or the "receiving said file" steps of claims 9 and 14 is necessary in view of the construction of the disputed terms above. | Claims 1, 9, and 10: "said HTTP server" refers to the same web server from which the web user/client requested the HTML document<br><br>Claim 14: "said server" refers to the same server from which the user requested the HTML document |

Netscape also submits that the "transmitting said file" steps of claims 1 and 10 and the "receiving said file" steps of claims 9 and 14 do not require a separate construction by the Court. The individual disputed terms, such as "file," "http," "http server," http client," and "server," will be addressed by the Court.  Once these terms are construed, the meaning of the "transmitting said file" and "receiving said file" steps will be resolved.   Accordingly, despite Defendants' contentions, these steps do not require any separate constructions, and the remaining language cited in these steps (e.g., "transmitting" and "receiving") are readily understood according to their plain and ordinary meaning.

For the same reasons already explained above, Defendants' proposed constructions attempt to rewrite and import terms into the claims (e.g., "web user/client," "user, " "web server," and/or "HTML document") without any basis other than restricting the claims to specific embodiments in the patent.  The scope of the '670 patent is not limited to Defendant's proposed

---

[12] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2-6.

constructions, as evidenced by the robust range of embodiments disclosed in the specification and the final claim language allowed by the U.S. Patent and Trademark Office.

Moreover, contrary to Defendants' proposal, "said HTTP server" and "said server" should not be construed to be the "same web server" and "same server," respectively. For example, while a client may send a request to a server, the specification describes embodiments having multiple servers with files or other information returned to the client. For example, the embodiment of Fig. 2 of the '670 patent demonstrates an arrangement in which there is the retrieval of remote text and images from a number of servers and, thereafter, integration of the various files into a web page by a client computer. *See* Ex. A, '670 patent, col. 6, ll. 12-13. The specification of the '670 patent also discloses that a "server" may be implemented as a server system that includes one or more computers or related servers. *See*, *e.g.*, *id.*, Abstract; col. 4, l. 16 - col. 5, l. 5; Figs. 1A-1B.

Contrary to what is described in the specification, Defendants attempt to limit the claims to one or the "same" server. "A claim interpretation that would exclude the reasonable practice of the method taught in the patent is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support." *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1309-10 (Fed. Cir. 2001). For this additional reason, Defendants' proposed construction should be rejected by the Court.

#### 4. "transmitting a state object" and "receiving a state object"

| Term | Netscape's Construction | Defendants' Construction[13] |
|---|---|---|
| Claims 1 and 10:<br>transmitting a state<br>object from said http<br>server to said http | No further construction of the<br>"transmitting a state object" steps<br>of claims 1 and 10 is necessary in<br>view of the construction of the | Claims 1 and 10:<br>the claimed "file" (*i.e.*, HTML<br>document) and state object are<br>sent to the web user/client |

---

[13] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2-6.

| client | disputed terms above. | together |
|---|---|---|
| Claim 9:<br>receiving a state object which specifies state information from said http server<br><br>Claim 14:<br>receiving a state object which specifies state information from said server | No further construction of the "receiving a state object" steps of claims 9 and 14 is necessary in view of the construction of the disputed terms above. | Claims 9 and 14:<br>the claimed "file" (*i.e.*, HTML document) and state object are sent to the web user/client together from the web server from which the web user/client requested the HTML document. |

The "transmitting a state object" steps of claims 1 and 10 and the "receiving a state object" steps of claims 9 and 14 do not require any separate constructions by the Court. Netscape submits that these steps can be readily understood by applying the proper constructions of the individual terms addressed above, including "state object," "state information," "server," "http," "http server," and "http client."   The only remaining terms in these steps, including "transmitting" and "receiving," do not require any specific or limited meaning.  Instead, consistent with the intrinsic evidence, the plain and ordinary meaning of these terms should apply.

As with the other steps, the Court should reject Defendants' attempt to rewrite and add unnecessary limitations and restrictions to the claims.  For the reasons noted above, the claims are not limited to, for example, a "file" in the form of a "HTML document," a "server" in the form of a "web server," or a "client" in the form of a "web user/client."  Defendants proposals are results driven based on their defenses and fail to recognize the full scope and range of embodiments presented and claimed in the '670 patent.

Among other flaws related to their constructions, Defendants' proposals attempt to rewrite the claims so that (1) the separate steps of "transmitting [receiving] a state object" and "transmitting [receiving] said file" are combined into a single step of "transmitting [receiving] a

state object and said file" and (2) the file and state object "are sent to the web user/client together." Such a rewriting of the claims is patently inappropriate and contrary to the specification and specific language of the claims, and thus should be rejected as violating basic claim construction principles. *See Phillips*, 415 F.3d at 1316; *Wenger Mfg.*, 239 F.3d at 1237.

Claim 1, for example, recites "transmitting said file from said http server to said http client," and separately recites "transmitting a state object from said http server to said http client." Claims 9, 10, and 14 similarly recite two separate steps with respect to the transmission or receipt of the "file" and "state object." Further, nothing in the specification requires that the file and state object be transferred together and certain disclosed embodiments demonstrate that a requested "file" (or "files") can be sent separately from the "state object." *See, e.g.,* Ex. A, '670 patent, col. 11, l. 63 - col. 12, l. 48, Fig. 5.

Defendants' proposed constructions are vague and will also lead to confusion. This is demonstrated by Defendants' proposals for claims 9 and 14 which are inconsistent with their construction for claims 1 and 10, because the former adds the limitation "from the web server from which the web user/client requested the HTML document." Beyond this inconsistency, Defendants' construction for claims 9 and 14 are legally untenable because the fail to consider and eliminate the term "receiving," which is a recited term of the "receiving a state object" steps. Additionally, Defendants' reference to a "web user/client" in connection with claim 14 is especially vague and contrary to the claim language in that there is no recital of a "client."

### 5. "storing said state object"

| Term | Netscape's Construction | Defendants' Construction[14] |
|---|---|---|
| Claims 1 and 9: storing said state object on | No further construction of the "storing said state object" | placing the state object/information in memory |

---

[14] *See* Ex. B, Joint List of Disputed Claim Terms and Proposed Constructions, at 2, 4-6.

| said http client<br><br>Claim 14:<br><br>storing said state object on one of said memory and said computer readable medium | steps of claims 1, 9, and 14 is necessary in view of the construction of the disputed terms above. | such that it can be sent back to the server from which the web user/client requested the HTML document |
| --- | --- | --- |

The "storing said state object" steps of claims 1, 9, and 14 do not need construction in view of the individual disputed terms in these steps.  Indeed, claims 1 and 9 merely recite "storing said state object on said http client," and the disputed terms, such as "state object" and "http client," will be separately construed by the Court.  "Storing" is a well-known term in the art and does not require construction, and the parties do not dispute the meaning of "memory," as recited in claim 14.  Defendants, once again, are using a supposed dispute concerning the construction of the overall "storing" step as a pretext to reargue its positions and add limitations unrelated to what is recited in the claims.

Because "storing" does not require construction and the remaining terms in the "storing" step will be construed or are not disputed terms, Defendants' construction should be rejected.

## V.   CONCLUSION

In view of the foregoing, Netscape respectfully requests that the Court adopt its proposed constructions and reject Defendants' proposed constructions.

Dated: July 16, 2009                          Respectfully submitted,


      /s/ Robert L. Burns
Robert L. Burns (VSB # 65159)
robert.burns@finnegan.com
Umar Arshad (VSB #74638)
umar.arshad@finnegan.com
Nicholas J. Nugent (VSB # 77141)
nicholas.nugent@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571)-203-2700
Fax: (202) 408-4400


Gerald F. Ivey (DCB #367009)
gerald.ivey@finnegan.com
C. Gregory Gramenopoulos (VSB #38633)
c.gregory.gramenopoulos@finnegan.com
John M. Williamson (DCB #472713)
john.williamson@finnegan.com
C. Brandon Rash (VSB #72248)
brandon.rash@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000
Fax: (202) 408-4400

**Attorneys for Plaintiff**
**Netscape Communications Corp.**

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on the 16th day of July, 2009, I will electronically file the foregoing **Plaintiff Netscape Communications Corp.'s Opening Claim Construction Brief** with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

Amy S. Owen
aowen@cochranowen.com
Sheila Costin
scostin@cochranowen.com
COCHRAN & OWEN, LLC
8000 Towers Crescent Drive, Suite 160
Vienna, VA 22182
scostin@cochranowen.com
Phone: (703) 847-4480
Fax: (703) 847-4499

Kristen A. Hird
kristin.hird@bryancave.com
Bryan Cave LLP
1155 F. Street NW
Washington, DC 20004
Phone: (202) 208-6000
Fax: (202) 508-6200

**Attorneys for Defendants**

                                             /s/ Robert L. Burns
                                     Robert L. Burns (VSB # 65159)
                                     robert.burns@finnegan.com
                                     Umar Arshad (VSB #74638)
                                     umar.arshad@finnegan.com
                                     Nicholas J. Nugent (VSB # 77141)
                                     nicholas.nugent@finnegan.com
                                     FINNEGAN HENDERSON FARABOW
                                     GARRETT & DUNNER, LLP
                                     Two Freedom Square
                                     11955 Freedom Dr.
                                     Reston, VA 20190
                                     Phone: (571)-203-2700
                                     Fax: (202) 408-4400

                                   Gerald F. Ivey (DCB #367009)
                                   gerald.ivey@finnegan.com

C. Gregory Gramenopoulos (VSB #38633)
c.gregory.gramenopoulos@finnegan.com
John M. Williamson (DCB #472713)
john.williamson@finnegan.com
C. Brandon Rash (VSB # 72248)
brandon.rash@finnegan.com
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000

**Attorneys for Plaintiff**
**Netscape Communications Corp.**