**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| NETSCAPE COMMUNICATIONS CORP., ) | |
| ) | |
| Plaintiff, ) | Case No.  1:09-cv-00225-TSE-TRJ |
| ) | |
| v. ) | |
| ) | |
| VALUECLICK, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**NETSCAPE'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO STRIKE DEFENDANTS' SEPTEMBER 24, 2009, CONTENTIONS
AS UNTIMELY UNDER THE COURT'S SCHEDULING ORDER
AND THE COURT'S JULY 31, 2009, ORDER**

**I.   INTRODUCTION**

At 2:30 a.m. on the morning of the Court's scheduled final pretrial conference, summary judgment hearing, and claim construction hearing, ValueClick surprised Netscape with a "supplemental" damages expert report, along with a new set of contentions and initial disclosures, in which ValueClick claims that it is entitled to $10 billion in restitution for its fraud counterclaims.  Aside from having no basis in fact or law, the new damages contentions are a profound departure from ValueClick's prior expert opinions and damages contentions.  Specifically, under its new theory ValueClick now claims that it is entitled to 5% of the revenues of the entire online advertising market (estimated at $23.4 billion per year for the next six years until the patent expires) because, hypothetically, that is what Netscape could earn if it successfully sued everyone in the industry for infringement of the '670 patent (in reality Netscape never sued anyone, except ValueClick—which was a defensive measure only taken after ValueClick sued first).  In its prior contentions and damages expert report, on the other

hand, ValueClick advanced a damages theory for its counterclaims that would amount to nothing more than (1) a set-off of royalty payments and litigation costs (i.e., whatever Netscape is awarded from ValueClick by winning this case would have to be paid back to ValueClick, in addition to the cost of the litigation), (2) any losses suffered if ValueClick were enjoined from using Netscape's patented technology (e.g., the value of lost business), and (3) unjust enrichment gains that Netscape would enjoy, at ValueClick's expense, by virtue of winning its case against ValueClick (e.g., a portion of ValueClick's lost market share that Netscape would gain). [1]

ValueClick's assertion of a wholly new theory—stepping into the shoes of the entire industry in an effort to expand Netscape's exposure to $10 billion—for the first time on the morning of the date scheduled for the final pretrial conference is highly prejudicial to Netscape. Nothing in ValueClick's prior disclosures supports the extreme theory whereby ValueClick now seeks astronomical damages by anointing itself, in essence, a private attorney general to "right" hypothetical "wrongs" for every member of the entire industry (none of whom have, in reality, been wronged by Netscape in any way whatsoever). Setting the suspect merits of this untimely new contention aside, had Netscape known that ValueClick intended to seek $10 billion—not zero (i.e., a set-off) and not amounts within Netscape's control (i.e., amounts that could be avoided by simply granting ValueClick a license)—Netscape would have, unsurprisingly, conducted its entire case differently. Among other things, Netscape would have moved to dismiss and/or moved for partial summary judgment on the issue, sought extensive third party discovery on the issue, retained additional experts, and conducted its discovery and depositions of the defendants and their experts differently.

---

[1] While these disclosures were made in accordance with the Court's schedule, Netscape reserves all objections to the substance and admissibility of all ValueClick disclosures discussed herein.

When Netscape challenged ValueClick to file an opposed motion for leave for the Court's permission to submit its untimely expert report—reminding ValueClick that two weeks *before* ValueClick served its untimely report, ValueClick successfully moved to strike a Netscape report as too late—ValueClick chose to "withdraw" its report rather than approach the Court for leave. At the same time, however, ValueClick has refused to withdraw the new, untimely damages contentions that accompanied the report. Most troublingly, ValueClick has refused to remove the incorporations by reference of the supposedly "withdrawn" expert report that are found in its new contentions.[2] Likewise, ValueClick has refused to withdraw its addition of "restitution" and "enrichment" to its untimely damages contentions. But these new contentions unquestionably expand ValueClick's remedy theories in this case and, just like the now withdrawn expert report, the new contentions and new initial disclosures are untimely and remain highly prejudicial to Netscape.

Netscape submits that ValueClick should be limited to the contentions and expert reports that were timely served in accordance with the Court's scheduling order. New contentions (and new reports) served on the morning of the scheduled final pretrial conference are too late. Indeed, ValueClick recently argued as much when it successfully sought to strike a Netscape report as untimely.

Netscape's counsel conferred in good faith with ValueClick's counsel in an effort to resolve this matter without Court intervention. Netscape brings the present motion to strike the untimely and prejudicial contentions added by ValueClick after the close of discovery and to

---

[2] Moreover, in withdrawing its untimely expert report, ValueClick reserved the "right" to "resubmit" its untimely expert report during the Court's consideration of pretrial motions. Exhibit 1. But there is no such "right" as the expert report is untimely, prejudicial, and formally withdrawn. Additionally, Netscape submits that it would be improper to serve new expert reports on the eve of trial in an effort to gain leverage during the Court's consideration of Daubert motions and motions in limine.

strike any incorporation by reference in ValueClick's amended disclosures of the now withdrawn supplemental expert report on damages. Specifically, Netscape seeks to strike as untimely all new damages contentions and all references to the now withdrawn supplemental expert report contained in: 1) Defendants' Second Amended and Supplemental Combined Preliminary Contentions Regarding Counterclaims for Intentional Misrepresentation or Fraud, Negligent Misrepresentation or Constructive Fraud, and Unfair Competition ("Second Amended Fraud Counterclaims") (Ex. 2 (redline showing untimely additions)); and 2) the Amended and Supplemental Combined Updated Initial Disclosures of Defendants ("Amended Initial Disclosures") (Ex. 3 (redline showing untimely additions)).

## II.     BACKGROUND

On February 27, 2009, Netscape sued ValueClick, Inc., Mediaplex, Inc., FastClick, Inc., Commission Junction, Inc., Meximedia, Inc. and Web Clients, LLC (collectively "ValueClick"), for infringement of certain claims of U.S. Patent No. 5,774,670 (the "'670 patent"). (Dkt. 1).

On July 24, 2009, ValueClick moved to amend its Answer to add counterclaims for fraud, constructive fraud, and unfair competition (collectively the "fraud counterclaims"). (Dkt. 148). The fraud counterclaims are all premised on this lawsuit (i.e., the claims allege that Netscape engaged in fraud or unfair competition "by filing this lawsuit." (Dkt. 149-2 at paras. 23, 39, 48)). Consistent with all of ValueClick's timely disclosures, the counterclaims included a prayer for relief seeking, *inter alia*, "restitution for any amounts *that Netscape received from Defendants*, or *received at Defendants' expense or detriment*, as a result of Netscape's wrongful conduct." (Dkt 149-2 at 30 (emphasis added)).

After briefing and a hearing on the matter, the Court allowed ValueClick to amend its Answer and Counterclaims. As the new counterclaims were filed well after discovery began and in the midst of the bifurcated damages discovery period, the Court ordered ValueClick to

4

"immediate[ly]" file "a document in the nature of an answer to a contention interrogatory that sets out in detail every fact on which they rely and the source of every fact on which they rely in support of the new counterclaim, and a listing by Bates number or otherwise of every document that they contend has any relevance to the claim whatever." (Ex. 4 (7/31/09 Hearing Tr.) at 9-10). On August 4, 2009, ValueClick filed a document containing its contentions for its fraud counterclaims. (Ex. 5).

Despite the Court's order, despite the fact that damages discovery began almost a month before ValueClick's contentions were due, and despite the fact that Rule 26(a)(1)(iii) requires ValueClick to disclose its damages contentions, ValueClick's August 4, 2009, contentions contained no information regarding damages. This deficiency, however, was cured several weeks later when, the night before the deposition of ValueClick's Rule 30(b)(6) witness on the counterclaims, ValueClick served an extensive set of supplemental contentions that included its damages contentions. (Ex. 6). Again, consistent with all of ValueClick's timely disclosures, these August 28, 2009, contentions stated that ValueClick seeks "restitution of *all amounts that Netscape has received from Defendants* as a result of Netscape's wrongful conduct." (Ex. 6 at 20 (emphasis added)). The August 28, 2009, contentions also enumerated a list of ten discrete categories of "damages" (not "restitution" or "enrichment"). (*Id*. at 21).

ValueClick timely served its expert report in support of its counterclaim damages on August 31, 2009. The damages positions in the expert report consist of (1) a set-off and litigation costs, (2) any losses suffered if ValueClick were enjoined from using Netscape's patented technology, and (3) unjust enrichment gains that Netscape would enjoy, at ValueClick's expense, by virtue of winning its case against ValueClick. (Ex. 7 at paras. 6-14). The report does not disclose or support any theory that ValueClick is somehow entitled to step into the

5

shoes of the entire industry and recover 5% of the revenues of the entire Internet advertising industry from Netscape based on a purely hypothetical, successful "assertion" of Netscape's patent against every member of the industry.[3]

Both parties moved for dispositive relief on September 4, 2009, and both parties filed answering briefs on September 9, 2009. On September 25, 2009, the Court conducted a hearing on claim construction and summary judgment (the hearing was also to be the final pretrial conference (Dkt. 169), but pretrial matters were not addressed). The Court has ordered the parties to return for additional argument on October 16, 2009.

The night before the September 25, 2009, hearing, ValueClick served its supplemental expert report (Ex. 8) and its Second Amended Fraud Counterclaims and its Amended Initial Disclosures, the subject of this present motion to strike. (Exs. 2, 3). Here, for the first time, ValueClick disclosed wholly new contentions based on the theory that ValueClick should recover—from Netscape—a percentage of the revenues of the entire Internet advertising industry. Specifically, under a new heading entitled "Unjust Enrichment Relating to Gains from Assertion of the '670 Patent," ValueClick departs from seeking damages based on (1) its losses and/or (2) Netscape's gains received at ValueClick's expense, and instead seeks and calculates hypothetical "gains" from Netscape's hypothetical "assertion" of its patent against everyone in the industry:

- "[I]f the counterclaim defendant is found liable for the Netscape Acts, its past, present, and future claims of the '670 patent against ValueClick and others in the Internet community would represent unjust enrichment." (Ex. 8 at 7-8).

---

[3] While the report contains a footnote indicating that "all benefits that Netscape and related entities gain *from asserting the '670 patent* or the 'cookies' technology could be considered unjust enrichment," (Ex. 7 at n.7) (emphasis added), this footnote is meaningless because Netscape is not asserting the '670 patent against anyone other than ValueClick. Moreover, where the expert actually opines on "unjust enrichment," the opinion is limited—consistent with all timely disclosures—to "any reasonable royalty assessed against ValueClick" and "profits gained by AOL from existing and future business lost by ValueClick." (*Id*. at paras. 67-69).

6

- "[A]ll benefits, not just the portion related to ValueClick, that the counterclaim defendant gains from asserting the '670 patent could be considered unjust enrichment and disgorged." (*Id*. at 8).

- "[T]he counterclaim defendant stands to benefit substantially if the 5% royalty rate determined by Dr. Stiroh and Dr. Meyer are applied to the Internet community." (*Id*.)

- "[T]he unjust enrichment benefit that the counterclaim defendant may extract from the online advertising space is approximately $1.2 billion per year . . . Netscape's nominal unjust enrichment gains over a six year period from 2009 to 2015 (when the patent expires) may exceed $10 billion, which should be disgorged if the counterclaim defendant is found to be liable for the Netscape Acts and the Court determines that in addition to ValueClick, other online advertising companies in the Internet community also may be adversely affected." (*Id.* at 14).

In establishing its new "$1.2 billion per year" damages figure, ValueClick relies upon documents (e.g., third party market reports) that were never produced in discovery (let alone in accordance with the Court's order that the defendants identify all documents upon which they intend to rely by no later than August 4, 2009). It also relies upon complex economic rationales and approaches that—due to their untimely disclosure—were never tested in discovery and were never rebutted. (Ex. 8 at paras. 18-29). These surprising new contentions in the "withdrawn" expert report (which, again, remains incorporated into ValueClick's new contentions by reference) were also accompanied by substantive modifications to ValueClick's contentions. Specifically, ValueClick deliberately added the loaded words "restitution" and "enrichment" to its contentions in places where it apparently deemed it necessary to support expanded theories. (Exs. 2, 3). For instance, ValueClick materially expanded its remedy theories by transforming the ten earlier-disclosed, discrete categories of "damages" into categories of "damages and/or restitution." While Netscape contests the factual and legal basis for all of ValueClick's new contentions and disclosures, the relief sought in this motion is based solely on the untimely disclosure of the new contentions.

7

**III.   SUMMARY OF ARGUMENT**

ValueClick should be limited to its damages contentions disclosed on August 27, 2009—before the 30(b)(6) deposition, before expert discovery, before dispositive motions, before the close of discovery—along with the damages expert report that was timely filed on August 31, 2009. There is no basis, justification, or good cause for ValueClick's supplementation of contentions at this late stage of the case.

**IV.   APPLICABLE LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 26 and 37, and in accordance with Fourth Circuit and Federal Circuit law, this Court has the authority to strike Defendants' untimely contentions. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 851 (Fed. Cir. 2006) (holding the district court did not abuse its discretion when it determined that the accused infringer could not introduce a prior art device disclosed after the close of discovery); *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598-99 (4th Cir. 2003) (finding the district court properly examined five factors before excluding late disclosed expert opinion). Federal Rule of Civil Procedure 26(e) requires a party to supplement its Rule 26(a) initial disclosures and any contention interrogatories "in a timely manner if . . . incomplete or incorrect." Federal Rule of Civil Procedure 37(c)(1) provides for exclusion of untimely Rule 26(a) or Rule 26(e) disclosures unless the "failure was substantially justified."

In *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003), the Fourth Circuit enumerated five factors to consider when evaluating a late-disclosed expert opinion under Rule 37(c)(1): "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id*. at 597; *see also*

*Viskase Corp. v. American National Can Co.*, 261 F.3d 1316, 1326 (Fed. Cir. 2001) (finding no basis to review "the district court's response to [the accused infringer's] disregard of the court's procedures" where the district court refused to accept the accused infringer's late filed invalidity statement); *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 550-51 (Fed. Cir. 1998) (finding district court did not abuse its discretion when it excluded a prior art reference not disclosed during the discovery, "[W]hen the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial.").

**V.   ARGUMENT**

**A.   Exclusion Appropriate Where Discovery Deadline Passed and Defendants Failed to Timely Supplement Under Rule 26(e)**

Rule 26(e) requires parties to supplement their Rule 26(a) initial disclosures and any interrogatory responses "in a timely manner if . . . incomplete or incorrect." The damages contentions ValueClick has put at issue here are a required "initial disclosure" under Rule 26(a)(1)(A)(iii) and are a contention interrogatory answer pursuant to the Court's July 31, 2009, Order. Where failure to supplement was not substantially justified, the disclosure is properly excluded under Rule 37(c)(1). Here, ValueClick has no justification for delaying disclosure, and its surprise damages contentions should be struck. Moreover, the Court set a "stationary target to take shots at" and that date has passed. (*See* Ex. 9 (9/18/09 Hearing Tr). at 8). ValueClick's attempt here to add these contentions well after the target date disregards the Federal Rules, the Court's schedule, and the Court's recent, express guidance on the very issue of untimely disclosures.

During the meet and confer process, ValueClick tried to justify its late disclosure by arguing that it only recently learned that Netscape was seeking a reasonable royalty of 5% as damages for patent infringement (in fact ValueClick learned of the exact amount of Netscape's

9

reasonable royalty on August 31, 2009, when Netscape timely provided its expert report). ValueClick has always known, however, that Netscape was seeking a reasonable royalty in this case (indeed the Patent Act requires that the Court award at least a reasonable royalty to a successful plaintiff). As such, nothing would have prevented ValueClick from disclosing its contentions earlier. Indeed, as recognized by ValueClick's expert in the withdrawn report, the actual amount of the royalty sought is immaterial to the *contention* that ValueClick now advances (and could have advanced long ago): "If the factfinder concludes that a non-zero royalty is appropriate, the framework that I have set forth in this report would be applicable for determining unjust enrichment damages." (Ex. 8 at n.28).

Moreover, beyond the issue of ValueClick's improper incorporation of an untimely expert report into untimely new contentions and initial disclosures, nothing justifies ValueClick's addition of the theories of "restitution" and "enrichment" to its contentions at this late stage. For instance, there is no reason why ValueClick could not have told Netscape that it sought both "damages" and "restitution" for the ten enumerated items in its contentions when it supplemented the contentions on August 27, 2009 (or on the Court's ordered August 4, 2009, deadline). Instead, ValueClick hid its intention to seek a remedy based on a "restitution" contention for those ten items until September 24, 2009. ValueClick has offered no justification for this untimely disclosure.

> **B.   Exclusion Is Warranted Where ValueClick Failed to Comply With the Court's Order Regarding Addition of Counterclaims**

On July 31, 2009, the Court ordered ValueClick to "immediate[ly]" provide Netscape "a document in the nature of an answer to a contention interrogatory that sets out in detail every fact on which they rely and the source of every fact on which they rely in support of the new counterclaim, and a listing by Bates number or otherwise of every document that they contend

10

has any relevance to the claim whatever." (Ex. 4 (7/31/09 Hearing Tr.) at 9-10). Well after the August 4, 2009, deadline, and after the parties had fully briefed summary judgment, ValueClick filed its Second Amended Fraud Counterclaims at issue in the present motion. By adding new damages contentions at this late date (as well as new documents--still unproduced--to support the new contentions), ValueClick has not met the Court's requirement to "immediate[ly]" "set out in detail" its counterclaim contentions. The Court mandated the immediate disclosure of the Defendants' counterclaims so that the "plaintiff will not be prejudiced." (*Id*. at 9). Again, there was nothing to prevent ValueClick from timely disclosing its contention that it intended to seek damages based on the revenues of the entire Internet advertising industry if Netscape sought any "nonzero royalty" (a foregone conclusion in a patent infringement case). ValueClick's failure to comply with the Court's order prejudices Netscape and mandates exclusion of its late filed contentions.

    C. **ValueClick's New Contentions Should Be Excluded Under *Southern States***

An application of the *Southern States* factors to the facts at hand leads to the conclusion that ValueClick's untimely new contentions should be excluded. As discussed above, ValueClick's prior disclosures on damages do not contain a single statement that would put Netscape on notice that ValueClick intended to seek $10 billion in restitution based on its previously undisclosed theory. Nor did ValueClick's prior disclosures put Netscape on notice that ValueClick intended to seek "restitution" for the ten enumerated items that were previously disclosed as "damages" items.

Turning to the second *Southern States* factor, Netscape cannot cure the prejudice caused by ValueClick's surprise contentions. Similar to the plaintiff in *Southern States*, ValueClick's late disclosure does not give Netscape an opportunity to have its own damages expert examine ValueClick's theory. Nor will cross-examination of ValueClick's damages expert for the first

11

time at trial cure the surprise. Moreover, ValueClick's disregard of its obligation to timely supplement its contentions under Rule 26(e) denied Netscape the ability to pursue discovery (including third party discovery) on this issue. In fact, because ValueClick's new contentions rest on a complex series of hypothetical factual assumptions about the patent holdings, revenues, and technologies of third parties (e.g., that Netscape infringes third party patents, that third parties are going to sue Netscape for this infringement, that third parties practice Netscape's '670 patent, the third parties' revenues are related to their practice of Netscape's '670 patent, that Netscape is going to sue these third parties as a defensive measure, and that Netscape is going to prevail and collect 5% of all revenues), ValueClick's new $10 billion claim necessitates extensive third party discovery that cannot be conducted before trial under the current schedule.

Turning to the third factor, any delay in the trial due to additional discovery necessitated by ValueClick's new contentions would disrupt the Court's schedule and the trial preparation the parties have currently conducted. ValueClick disclosed its new contentions on the eve of the scheduled final pretrial conference, after the close of discovery, and after the due date for dispositive motions.

The fourth *Southern States* factor examines the importance of the evidence. Similar to the Defendant in *Southern States*, ValueClick's new contentions here—should they be admitted—would be "helpful to [ValueClick's] case in the eyes of the jury," and thus "point out why [the contentions] should have been disclosed in a timely manner" to Netscape. *Southern States*, 318 F.3d at 598-99.[4]

Finally, the fifth Southern States factor requires an examination of ValueClick's "explanation for its failure to disclose." As discussed above in Section V(A), ValueClick does

---

[4] On the merits, Netscape preserves its position that the new contentions are without support in fact or law and are not admissible.

not have a justification for failing to disclose these contentions. Thus, all of the *Southern States* factors favor Netscape, and ValueClick's untimely contentions should be struck.

## VI.     ALTERNATIVE RELIEF

Should the Court deny the present motion to strike, Netscape alternatively requests the Court sever and/or stay ValueClick's fraud counterclaims. The profound effect of adding a new $10 billion damages claim on the eve of trial (one that Netscape submits is entirely without factual or legal support), as well as new contentions for restitution, creates a prejudice that cannot be cured without disrupting the trial date for ValueClick's fraud counterclaims. Netscape requests the opportunity to take extensive discovery (including third party discovery on the "Internet advertising industry"), prepare and submit expert opinions on the issue, and move for partial summary judgment on the previously undisclosed damages contentions.

## VII.    Conclusion

For the reasons stated herein, Netscape respectfully requests that the Court grant Netscape's motion to strike and enter an order striking ValueClick's new September 24, 2009, damages contentions and awarding such other and further relief as the Court deems just and proper.

Date: October 9, 2009                                                         Respectfully submitted,

                                                                                       /s/ Robert L. Burns
                                                                              Robert L. Burns (VSB # 65159)
                                                                              robert.burns@finnegan.com
                                                                              Umar Arshad (VSB #74638)
                                                                              umar.arshad@finnegan.com
                                                                              Nicholas J. Nugent (VSB # 77141)
                                                                              nicholas.nugent@finnegan.com

FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571)-203-2700
Fax: (202) 408-4400

Gerald F. Ivey (DCB #367009)
gerald.ivey@finnegan.com
C. Gregory Gramenopoulos (VSB #38633)
c.gregory.gramenopoulos@finnegan.com
John M. Williamson (DCB #472713)
john.williamson@finnegan.com
C. Brandon Rash (VSB # 72248)
brandon.rash@finnegan.com
Philip A. Riley (VSB #65871)
andrew.riley@finnegan.com
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000

**Attorneys for Plaintiff**
**Netscape Communications Corp.**

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 9th day of October, 2009, I will electronically file the foregoing **Netscape's Memorandum in Support of its Motion to Strike Defendants' September 24, 2009, Contentions as Untimely Under the Court's Scheduling Order and the Court's July 31, 2009 Order** with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

Amy S. Owen
aowen@cochranowen.com
Sheila Costin
scostin@cochranowen.com
COCHRAN & OWEN, LLC
8000 Towers Crescent Drive, Suite 160
Vienna, VA 22182
scostin@cochranowen.com
Phone: (703) 847-4480
Fax: (703) 847-4499

Kristen A. Hird
kristin.hird@bryancave.com
Bryan Cave LLP
1155 F. Street NW
Washington, DC 20004
Phone: (202) 208-6000
Fax: (202) 508-6200

**Attorneys for Defendants**

                                                  /s/ Robert L. Burns
                                                  Robert L. Burns (VSB # 65159)
                                                  robert.burns@finnegan.com
                                                  Umar Arshad (VSB #74638)
                                                  umar.arshad@finnegan.com
                                                  Nicholas J. Nugent (VSB # 77141)
                                                  nicholas.nugent@finnegan.com
                                                  FINNEGAN HENDERSON FARABOW
                                                  GARRETT & DUNNER, LLP
                                                  Two Freedom Square
                                                  11955 Freedom Dr.
                                                  Reston, VA 20190
                                                  Phone: (571)-203-2700
                                                  Fax: (202) 408-4400

                                                  Gerald F. Ivey (DCB #367009)

2

gerald.ivey@finnegan.com
C. Gregory Gramenopoulos (VSB #38633)
c.gregory.gramenopoulos@finnegan.com
John M. Williamson (DCB #472713)
john.williamson@finnegan.com
C. Brandon Rash (VSB # 72248)
brandon.rash@finnegan.com
Philip A. Riley (VSB #65871)
andrew.riley@finnegan.com
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000

**Attorneys for Plaintiff
Netscape Communications Corp.**