**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

F I L E D
APR 15 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

NETSCAPE COMMUNICATIONS CORP., )
    Plaintiff, )
                           )
           v.                 )       No. 1:09cv225
                           )
VALUECLICK, INC., et al., )
    Defendants. )

## MEMORANDUM OPINION

At issue on summary judgment in this patent infringement suit is whether certain materials qualify as prior art references that may anticipate, and thus invalidate, U.S. Patent No. 5,774,670 ("the '670 patent"), colloquially known as the "Internet cookies" patent, under 35 U.S.C. § 102.[1]

### I.

The following undisputed material facts are pertinent to defendants'[2] prior art invalidity defense:[3]

    1.      In the summer and fall of 1994, plaintiff developed and sold to MCI Communications Corp. ("MCI") software that was to be integrated into

---

[1] Plaintiff moves for summary judgment only as to defendants' prior art *anticipation* defense under various subsections of 35 U.S.C. § 102. Yet, the resolution of this issue nonetheless affects defendants' prior art *obviousness* defense pursuant to 35 U.S.C. § 103, which is not subject to the motion at bar. The parties' legal dispute concerning the extent to which the resolution of plaintiff's motion affects the § 103 obviousness defense is addressed *infra* Part III.

[2] The six named defendants are ValueClick, Inc., Mediaplex, Inc., FastClick, Inc., Commission Junction, Inc., MeziMedia, Inc., and Web Clients, L.L.C., (collectively "defendants").

[3] For a full recitation of facts, *see Netscape Commc'ns Corp. v. ValueClick, Inc. (Netscape II)*, --- F. Supp. 2d ----, 1:09cv225, at 4-9 (E.D. Va. Jan. 29, 2010) (Mem. Op.).

MCI's online shopping mall product, known as marketplaceMCI. Specifically, MCI sought technology that would facilitate the transfer and processing of online customer order, billing, and shipping information. This required that http servers interact with client computers in a non-stateless environment. Plaintiff addressed the heretofore statelessness of the Internet by proposing and writing computer source code: (i) that directed an http server, in response to a client computer's request for a file via a Web browser, to send a state object containing state information to the client computer; and (ii) that directed the client computer to store the state object. This process of transferring and storing state information is indistinguishable from the four-step method disclosed in claim 1 of the '670 patent, namely: (i) an http client's requesting a file from an http server; (ii) an http server's sending the requested file; (iii) an http server's sending a "state object" containing state information, commonly referred to as a "cookie"; and (iv) the storage of this state object on the http client.[4] Importantly, the cookies technology was ready for patenting prior to October 6, 1994.[5]

2. Lou Montulli, the Netscape programmer tasked with developing and writing the computer source code for MCI and the named inventor on the '670 patent, filed the '670 patent application with the U.S. Patent and Trademark Office ("PTO") on October 6, 1995. The PTO issued the '670 patent on June 30, 1998. *See* Defs.' Ex. 1.

3. Defendants contend that in 1993 or 1994, Bjorn Freeman-Benson authored a paper (the "Freeman-Benson paper") entitled "Using the Web to Provide Private Information—or—Password Protection Without Modifying Clients." Pl.'s Ex. 36. In the course of his deposition, Freeman-Benson testified: (i) that he wrote the paper prior to June 1994, possibly in the fall of 1993; (ii) that he posted all his papers either on his personal Webpage or the Carleton University School of Computer Science's Website "as soon as [he] finished writing them," although he has no specific recollection of when or where he posted the Freeman-Benson paper; and (iii) that these Websites were accessible to the general public. Defs.'

---

[4] *See Netscape II*, --- F. Supp. 2d ----, 1:09cv225, at 5-8, 12-29 (summary judgment); *Netscape Commc'ns Corp. v. ValueClick, Inc. (Netscape III)*, --- F. Supp. 2d ----, 1:09cv225, at 5-27 (E.D. Va. Apr. 2, 2010) (Mem. Op.) (motion for reconsideration).

[5] *See Netscape II*, --- F. Supp. 2d ----, 1:09cv225, at 25-28 (concluding, by clear and convincing evidence, that the cookies invention was ready for patenting by October 6, 1994 under *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998)); *Netscape III*, , --- F. Supp. 2d ----, 1:09cv225, at 27-37 (same).

Opp'n Ex. 20, at 19-21; *see also* Pl.'s Ex. 37, at 34-35 (noting that he does not have any documentary evidence of posting the Freeman-Benson paper). The document bears the timestamp, "last updated Wed Jun 8 16:32:33 EDT 1994," and contains a notation that the paper "first appeared in the First International Conference on the World-Wide-Web (WWW'94), Geneva, Switzerland, May 1994."[6] Pl.'s Ex. 36, at 5. Consistent with this, Freeman-Benson testified in his deposition that he presented the paper at the May 1994 conference with 400-500 academics, researchers, and industry representatives in attendance. *See* Defs.' Opp'n Ex. 20, at 21-22. Additionally, defendants submit a Webpage printout by the conference sponsor listing the papers presented at the conference, among which is the Freeman-Benson paper. *See* Defs.' Opp'n Ex. 22.

4. The parties do not dispute that in 1995, David Kristol, Koen Holtman, and Brian Behlendorf independently posted on the Internet separate proposals addressing http statelessness or session tracking. *See* Defs.' Opp'n Exs. 3, 27-28.

5. On January 13, 1998, the PTO issued U.S. Patent No. 5,708,780 ("the '780 patent") to Levergood *et al.*, which listed as assignee Open Market, Inc. ("Open Market"). *See* Pl.'s Ex. 30. Similarly, on September 18, 2007, the PTO issued U.S. Patent No. 7,272,639 ("the '639 patent") to Levergood *et al.*, which listed as assignee Soverain Software, LLC ("Soverain"). *See* Pl.'s Ex. 31. Notably, Soverain is the successor entity to Open Market. Both patents (collectively "the Levergood patents") claim a filing date of June 7, 1995,[7] and disclose "methods for controlling and monitoring

---

[6] It appears that the copy of the Freeman-Benson paper in the summary judgment record was obtained from archive.org, a Website that provides permanent access to digital format files. Plaintiff argues that this copy—which, according to the Web address printed in the document's footer, appears to have been archived in 1997—cannot be prior art because it was not obtained from the Websites on which Freeman-Benson purportedly posted the paper. Yet, Freeman-Benson testified in his deposition that the document in the summary judgment record is in fact the paper he wrote and posted in 1994. *See* Defs.' Resp. to Pl.'s Supp. Prior Art Mem. Ex. 1, at 18. This uncontradicted statement is sufficient to authenticate the document under Rule 901(b)(1), Fed. R. Evid., which requires simply that a witness with knowledge provide "[t]estimony that a matter is what it is claimed to be."

[7] Although the '639 patent application was filed on January 12, 1998, it is a continuation of application No. 08/474,096 filed on June 7, 1995. The PTO ultimately granted the 08/474,096 application and issued it as the '780 patent on January 13, 1995. *See* Pl.'s Ex. 31, at 1. Although neither party disputes or addresses this point, it appears that the '639 patent is entitled to the benefit of the '780 patent's earlier filing date pursuant to 35 U.S.C. § 120, which states that "an

access to network servers." Pl.'s Exs. 30, 31.

6.    Defendants argue that in the spring and summer of 1994, Open Market—now Soverain—wrote computer source code embodying the technology ultimately claimed in the '780 patent (the "Soverain source code"). To that end, defendants submit an August 14, 2009 supplemental expert report by Ernest Johnson, which analyzes the '780 patent and documents produced by Soverain in the course of this litigation at defendants' request relating to the development of an ecommerce application in 1994. *See* Defs.' Opp'n Ex. 26.[8] Specifically, Johnson concludes: (i) that the Soverain source code is an embodiment of the invention claimed in the '780 patent; (ii) that the features disclosed in the '780 patent and implemented by the Soverain source code correspond to claims 1-10 and 14-26 of the '670 patent; and (iii) that the Soverain source code was put into practice as early as July 14, 1994, but no later than August 3, 1994. *See* Defs.' Opp'n Ex. 26 ¶¶ 19-29. In his deposition, Johnson states that his conclusion relating to the July 14, 1994 implementation date is based solely on a timestamp that appears atop the Soverain source code files. *See* Pl.'s Ex. 40, at 187-89, 250-59.

## II.

Defendants contend that the following prior art references anticipate and therefore invalidate the '670 patent under various provisions of 35 U.S.C. § 102:

(i) the Freeman-Benson paper purportedly published on the Internet as early as the fall of 1993 and given at an international conference in May 1994;

---

application for patent for invention . . . which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application" if two conditions are met: (i) that the application benefitting from an earlier filing date be "filed before the patenting . . . on the first application"; and (ii) that the application benefitting from an earlier filing date "contain a specific reference to the earlier filed application." 35 U.S.C. § 120. These conditions appear to be satisfied in this case. The '639 patent: (i) was filed on January 12, 1998, one day prior to the issuance of the related '780 patent; and (ii) makes explicit reference to the '780 patent application.

[8] Accompanying the Soverain materials is an affidavit by Katharine A. Wolanyk, Soverain's president and chief legal officer, in which she avers that the produced documents were created in the course of regularly conducted business by persons having actual knowledge of the documents' contents. *See* Defs.' Resp. to Pl.'s Supp. Prior Art Mem. Ex. 2.

(ii) the Levergood patents, which were filed on, or claim a priority date of, June 7, 1995;

(iii) the Soverain source code developed by Open Market—Soverain's predecessor entity—in July and August 1994; and

(iv) other public proposals posted on the Internet in the spring and summer of 1995—namely, the Kristol, Holtman, and Behlendorf proposals—that address http statelessness or session tracking.

Because the parties' experts sharply dispute whether these putative prior art references actually anticipate any claims of the '670 patent,[9] the substantive anticipation question is not appropriate for summary judgment. And indeed, summary judgment is not sought on this issue. Rather, plaintiff seeks partial summary judgment on the theory that these references do not constitute prior art as defined by § 102. Specifically, plaintiff's argument proceeds principally on two grounds: (i) that, as a matter of law, these putative prior art references cannot constitute invalidating references because they were indisputably not published or filed as an application for patent before the date required by the applicable subsection of 35 U.S.C. § 102; and/or (ii) that the documentary evidence relating to these prior art references contains inadmissible hearsay not appropriately considered on summary judgment, and thus defendants' otherwise uncorroborated testimonial evidence is insufficient to establish invalidity as a matter of law. In short, plaintiff argues that, based on the well-settled principle that defendants at trial bear the burden of proving invalidity by clear and convincing evidence,[10] summary judgment must be granted because "the

---

[9] *See, e.g.,* Pl.'s Ex. 4 ¶¶ 46-240 (providing claim-by-claim rebuttal testimony to defendants' expert regarding obviousness and anticipation based on prior art).

[10] *See, e.g.,* 35 U.S.C. § 282 ("A patent shall be presumed valid."); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,* 587 F.3d 1339, 1351 (Fed. Cir. 2009) ("A patent is presumed to be valid, so a party alleging invalidity further faces an evidentiary burden of *clear and convincing evidence* to show facts supporting a conclusion of invalidity." (emphasis added)).

non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof." *Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 83 (4th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Notably, where there are no material disputes of fact as to the publication or application dates of purported prior art references, the question whether a document constitutes a prior art reference is appropriately resolved on summary judgment. *See Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1377 (Fed. Cir. 2006).

## A. Freeman-Benson Paper

Defendants argue that the Freeman-Benson paper—which proposes a solution to Internet statelessness—is a prior art reference that anticipates, and thus invalidates, the '670 patent under 35 U.S.C. § 102(b). Section 102(b) states, in pertinent part, that "[a] person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Again, it is worth emphasizing that plaintiff does not seek summary judgment on the ground that the Freeman-Benson paper fails to anticipate the '670 patent, as this issue is disputed and must be litigated at trial.[11] Instead, plaintiff seeks summary judgment on the ground that the Freeman-Benson paper is not a *prior* art reference within the meaning of § 102(b) because it was not published more than one year before the '670 patent's

---

The Federal Circuit has explained that the clear and convincing evidence standard is met where "the ultimate factfinder [has] an abiding conviction that the truth of [defendants'] factual contentions are highly probable." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 n.5 (Fed. Cir. 2007).

[11] *See, e.g.*, Pl.'s Ex. 4 ¶¶ 85-90, 111-14, 188-92, 201-04, 213-16 (plaintiff's expert providing rebuttal testimony to defendants' expert concerning the Freeman-Benson paper).

application date.

The '670 patent was filed on October 6, 1995, and therefore defendants bear the burden of establishing, by clear and convincing evidence, that the Freeman-Benson paper was both published and publicly accessible prior to October 6, 1994. *See In re Lister*, 583 F.3d 1307, 1311-12 (Fed. Cir. 2009) ("[P]ublic accessibility has been called the touchstone in determining whether a reference constitutes a printed publication bar under 35 U.S.C. § 102(b)." (citation and quotation marks omitted)). Importantly, the Federal Circuit imposes a corroboration requirement where, as here, a patent's validity is challenged under § 102(b). *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1353, 1367 & n.10 (Fed. Cir. 1999) (extending corroboration requirement to all § 102 subsections); *see also Netscape III*, , --- F. Supp. 2d ----, 1:09cv225, at 15-24 (discussing Federal Circuit's decisions relating to the corroboration requirement). More precisely, "a patent cannot be invalidated based on one person's testimony alone without corroborating evidence, particularly documentary evidence." *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007).

In opposing plaintiff's motion for summary judgment, defendants rely chiefly, but not exclusively, on Freeman-Benson's statement that the Freeman-Benson paper was posted on the Internet between fall 1993 and May 1994. Specifically, Freeman-Benson testified at his deposition: (i) that he "post[ed] all [his] papers as soon as [he] finished writing them" either on the Carleton University School of Computer Science Website or his own personal Website, both of which were available to the general public; and (ii) that he wrote and submitted the Freeman-Benson paper prior to presenting it at the May 1994 First International Conference on the World-Wide Web. *See* Defs.' Opp'n Ex. 20, at 19-22. Although Freeman-Benson has no specific

recollection of publishing this particular paper on one of these Websites, he does aver that all of his papers were routinely posted online as they were completed, and in this respect it is settled that "[e]vidence of routine business practice can be sufficient to prove that a reference was made accessible before a critical date." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568-69 (Fed. Cir. 1988). As explained by the Federal Circuit, "[w]hile such evidence [of cataloging and shelving] would be desirable, in lending greater certainty to the accessibility determination, the realities of routine business practice counsel against requiring such evidence. The probative value of routine business practice to show the performance of a specific act has long been recognized." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1983).

Significantly, defendants do not rely solely on testimonial evidence to support their prior art defense, as "a patent cannot be invalidated based on one person's testimony alone without corroborating evidence, particularly documentary evidence." *Adenta*, 501 F.3d at 1371. Rather, Freeman-Benson's deposition testimony is corroborated by two documents in the summary judgment record. First, the Freeman-Benson paper itself memorializes the fact that "[t]his paper appeared in the First International Conference on the World-Wide-Web (WWW'94), Geneva, Switzerland, May 1994." Pl.'s Ex. 36, at 5. Second, a Webpage printout from the conference records that the Freeman-Benson paper was part of the May 1994 conference proceedings. *See* Defs.' Opp'n Ex. 22.

On this record evidence, a reasonable trier of fact could conclude, by clear and convincing evidence, that the Freeman-Benson paper is a prior art reference within the meaning of § 102(b) because it was published by May 1994, approximately five months before the '670 patent application was filed. Additionally, the record evidence would also support a finding that

-8-

the posting of the Freeman-Benson paper on computer science Websites and its presentation at an international conference on the Internet makes the paper "sufficiently accessible to the public interested in the art." *In re Lister*, 583 F.3d at 1311-12 (citation and quotation marks omitted); *see also Amazon.com, Inc. v. barnesandnoble.com, Inc.*, 239 F.3d 1343, 1365 (Fed. Cir. 2001) (accepting Webpage printout to be prior art reference). There is, therefore, no basis to conclude, as a matter of law, that "[t]he testimony of the witness[] together with the documentary evidence [does not] provide[] a coherent and convincing story." *Adenta*, 501 F.3d at 1371. Accordingly, plaintiff's motion for summary judgment as to the Freeman-Benson paper must be denied.

Plaintiff's contrary arguments are unpersuasive. Specifically, plaintiff contends that the documents on which defendants rely contain inadmissible hearsay not appropriately considered on summary judgment. Without this documentary evidence, plaintiff argues, no record evidence corroborates Freeman-Benson's testimony, and accordingly summary judgment must be entered against defendants because they fail to satisfy the corroboration requirement. *See id.* (requiring corroboration). Yet, a hearsay objection cannot be used to exclude evidence from the summary judgment record where, as here, the evidence may be presented at trial in an admissible form. As the Fourth Circuit has noted,

> In *Celotex Corp. v. Catrett*, the Supreme Court held that the nonmoving party could defeat summary judgment with materials capable of being reduced to admissible evidence *at trial*." . . . [T]he practical question presented by a motion for summary judgment is whether the case presents a genuine issue of fact for trial rather than whether the parties have put their evidence in final form.

*U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales of Va., Inc.*, 64 F.3d 920, 926

n.8 (4th Cir. 1995) (emphasis added, internal citation omitted).[12] In this case, defendants' exhibits may be admissible under the business records exception pursuant to Rule 803(6), Fed. R. Evid.[13] In this regard, defendants at trial may present testimony that the Freeman-Benson paper was timestamped as a matter of regular practice either by Freeman-Benson or automatically by the Website on which the paper was posted.[14] Likewise, defendants may present evidence that the conference sponsors, as a matter of regular practice, summarized conference proceedings and posted hyperlinks to presented papers shortly after holding conferences. Of course, at trial defendants may fail to clear these hurdles, in which case, absent other corroborating evidence, the Freeman-Benson paper will not qualify as prior art. At this stage, however, the inadmissibility of defendants' exhibits cannot be conclusively established, and thus the matter must be litigated at trial.

*B. Levergood Patents*

Defendants contend that the Levergood patents are prior art references that anticipate, and thus invalidate, the '670 patent under 35 U.S.C. § 102(e)(2), which provides, in pertinent part,

---

[12] Where, as here, a "case presents a procedural question not unique to patent law, [the Federal Circuit] follows the law of the regional circuit from which the case is appealed." *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1332 (Fed. Cir. 2010) (citation and quotation marks omitted). Accordingly, Fourth Circuit precedents govern whether the corroborating documents are appropriately considered on summary judgment given a hearsay objection.

[13] Of course, this does not limit defendants from arguing at trial that these exhibits are admissible under other provisions of Article 8, Fed. R. Evid. Moreover, it is worth noting that defendants bear the burden of authenticating the documents at trial pursuant to Article 9, Fed. R. Evid.

[14] On its face, the Web address printed in the Freeman-Benson paper's footer indicates that the paper was posted at a Carleton University Website, and that an image of the Carleton University Webpage was then saved at archive.org. *See* Pl.'s Ex. 36; *see also supra* note 6.

that "[a] person shall be entitled to a patent unless . . . (e) the invention was described in . . . (2) a patent granted on an application by another filed in the United States before the invention by the applicant for patent." 35 U.S.C. § 102(e)(2). Accordingly, to defeat summary judgment, defendants must present evidence that would allow a reasonable trier of fact to conclude clearly and convincingly that the Levergood patent applications were filed with the PTO prior to the cookies technology's "invention." As explained *supra*, whether the Levergood patents disclose all of the limitations claimed in the '670 patent is disputed by the parties' experts and is not at issue here.[15] Instead, plaintiff seeks summary judgment solely on the ground that the Levergood patents were not in the prior art within the meaning of § 102(e)(2).

The parties dispute the meaning of the statutory phrase, "before the invention by the applicant for patent," as used in § 102(e)(2). On the one hand, defendants argue that the statutory language refers to the '670 patent's filing date, October 6, 1995, and that the Levergood patent applications are therefore prior art references because they were filed four months before Montulli filed the '670 patent application. On the other hand, plaintiff argues that the statutory language refers to an earlier date, namely the date on which the cookies invention disclosed in the '670 patent was reduced to practice, and that the Levergood patent applications therefore cannot be prior art references because they were filed after the cookies invention was reduced to practice. Neither argument is correct, as the statutory language and federal courts' interpretation of § 102(e)(2) make clear that the date of "invention" refers to the date by which the cookies technology was "ready for patenting," as defined by the Supreme Court in *Pfaff v. Wells*

---

[15] *See, e.g.,* Pl.'s Ex. 4 ¶¶ 51-57, 95-97, 124-25, 136-39, 147-50, 154-57, 160-62, 179 (plaintiff's expert rebutting the expert report of defendants' expert with respect to the Levergood patents).

*Electronics, Inc.*[16]

In analyzing this question of statutory interpretation, it is appropriate to begin, as always, with the text of the statute. *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 254 (4th Cir. 2007) (citing *Limtiaco v. Camacho*, 549 U.S. 483 (2007)). Here, § 102(e)(2) plainly and unambiguously distinguishes between two dates: with respect to the patent alleged to be a prior art reference—*i.e.*, the Levergood patents—the date of *"application"* is the operative date; with respect to the allegedly anticipated and invalid patent—*i.e.*, the '670 patent—the date of *"invention"* is the operative date. *Cf. Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996) ("Any suggestion that a document is prior art because it appears before the filing date of a patent ignores the requirements of section 102(a). Section 102(a) explicitly refers to invention dates, not filing dates."). Had Congress intended to make the *application* date the relevant date for both the putative prior art patent reference and the patent-in-issue, it surely would have so stated.[17] *See Delverde, SrL v. United States*, 202 F.3d 1360, 1366 (Fed. Cir. 2000) ("If that had

---

[16] To be clear, plaintiff's contention that the reduction to practice date is the date of invention may, in some other circumstances, be correct. As explained in *Netscape II* and *Netscape III*, reduction to practice is one of two alternative theories under which a party may establish that an invention was ready for patenting. A party may also establish that an invention was ready for patenting by showing that the inventor made an enabling disclosure specific enough to allow a person skilled in the art to practice the invention. *See Netscape II*, --- F. Supp. 2d ----, 1:09cv225, at 12, 24-25; *Netscape III*, --- F. Supp. 2d ----, 1:09cv225, at 27-37. In this case, as discussed *infra*, the ready for patenting date of the cookies invention has already been determined under the enabling disclosure theory, and thus its subsequent reduction to practice is irrelevant to the § 102(e)(2) analysis.

[17] For example, § 102(b) uses such language in stating that a patent is invalid if it was "described in a printed publication . . . or in public use or on sale . . . more than one year prior to *the date of the application for patent* in the United States." 35 U.S.C. § 102(b) (emphasis added); *see also* 1-3 Chisum on Patents § 3.08 (explaining that under § 102(a), (e), and (g), "'the invention' anticipates if its effective date is 'before the invention thereof' by another," while § 102(b), (c), and (d) "relate to the date of application for a patent").

been Congress's intent, the statute would have so stated.").

Yet, this textual distinction between the *application* date and the *invention* date does not end the analysis; it simply clarifies that the word "invention" in the statute does not refer to the date on which Montulli filed the '670 patent application. Nonetheless, several district courts have sensibly concluded that the word "invention" refers to the date on which the invention was ready for patenting, as defined by the Supreme Court's decision in *Pfaff v. Wells Electronics, Inc. See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 585 F. Supp. 2d 568, 574-75 & nn.1-2 (D. Del. 2008) (holding that "invention" as used in § 102(e) means "ready for patenting" as defined by *Pfaff*); *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 528 F. Supp. 2d 654, 676-77 (E.D. Mich. 2007) (same).[18] Indeed, the Supreme Court's language in *Pfaff* lends considerable weight to this interpretation of the statute: "The primary meaning of the word 'invention' in the Patent Act unquestionably refers to the inventor's conception . . . ." 525 U.S. at 60. Accordingly, the statutory phrase, "before the invention by the applicant for patent," as used in § 102(e)(2), refers to the date the invention was ready for patenting under *Pfaff*, not the date of its filing.

It is worth briefly discussing defendants' argument that the date of invention under § 102(e)(2) must refer to the '670 patent's filing date. To be sure, in some circumstances—for example where, unlike here, no record evidence establishes when an invention was ready for

---

[18] The decision defendants cite in support of their argument is distinguishable because it applied a patent application date presumption with respect to an obviousness invalidity defense under § 103, not an anticipation defense under § 102(e)(2). *See Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000). And it is worth noting that even under § 103, the presumption that the date of invention is the filing date of the application for patent may be superseded by "evidence . . . show[ing] a date of invention prior to the effective date of the reference." 2-5 Chisum on Patents § 5.03.

patenting—it may be sensible to use the date of patent application as a proxy for determining whether "an application for patent by another [was] filed in the United States before the invention by the applicant for patent." 35 U.S.C. § 102(e)(2); *cf. Mahurkar*, 79 F.3d at 1577 ("Had Dr. Mahurkar not come forward with evidence of an earlier date of invention, the Cook catalog would have been anticipatory prior art under section 102(a) because Dr. Mahurkar's invention date would have been the filing date of his patent."). Yet, this presumption is unnecessary and serves no useful purpose where, as here, it has previously been determined by clear and convincing evidence that the invention claimed to be invalid was ready for patenting by a certain date.[19] *Cf. id.* (rejecting presumption that filing date was date of invention because actual date of invention was established). As explained in the *Chisum on Patents* treatise,

> A general rule in patent law is that the date of invention of the applicant or patentee for purposes of novelty and anticipation is presumed to be the date he files a complete patent application in the Patent and Trademark Office disclosing the invention. The applicant or patentee may avoid anticipation under some circumstances by establishing a pre-filing date of invention.

1-3 Chisum on Patents § 3.08. In this case, it would make little sense to allow defendants to argue that the cookies invention was ready for patenting prior to October 6, 1994, for purposes of applying the § 102(b) on-sale bar under *Pfaff*, yet argue inconsistently that this factual determination should be ignored for purposes of a § 102(e)(2) prior art anticipation analysis. Put simply, defendants' argument is incorrect because it fails to recognize that the presumption is

---

[19] *See Netscape II*, --- F. Supp. 2d ----, 1:09cv225, at 5-8, 25-28 (finding on summary judgment that cookies invention was ready for patenting by October 6, 1994); *Netscape III*, --- F. Supp. 2d ----, 1:09cv225, at 27-37 (confirming on motion for reconsideration that cookies invention was ready for patenting prior to October 6, 1994, under enabling disclosure theory, but holding that it was incorrect to conclude on summary judgment that cookies invention was ready for patenting under reduction to practice theory).

rebuttable and only applies in limited circumstances that are not presented here, namely a lack of evidence establishing the actual date of invention.

These principles, applied to the undisputed summary judgment record evidence, compel the conclusion that the Levergood patents do not constitute prior art under § 102(e)(2) and therefore cannot invalidate the '670 patent under an anticipation theory. In this case, it is undisputed that the '780 Levergood patent was filed with the PTO on June 7, 1995, and that the '639 Levergood patent claims a priority date of June 7, 1995. Thus, under the plain terms of § 102(e)(2), defendants must establish that the cookies invention was not ready for patenting until after June 7, 1995. This showing cannot be made, as it has previously been determined that the cookies invention was ready for patenting prior to October 6, 1994. *See Netscape II*, --- F. Supp. 2d ----, 1:09cv225, at 5-8, 25-28; *Netscape III*, --- F. Supp. 2d ----, 1:09cv225, at 27-37. Accordingly, plaintiff is entitled to summary judgment on defendants' § 102(e)(2) prior art invalidity defense with respect to the Levergood patents.

*C. Soverain Source Code*

Defendants next argue that the '670 patent is invalid under 35 U.S.C. § 102(g)(2) because the Soverain source code was written in the summer of 1994 and contains features sufficiently identical to the invention claimed in the '670 patent. Section 102(g)(2) states that "[a] person shall be entitled to a patent unless . . . before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2). It again bears emphasis that whether the Soverain source code anticipates the cookies technology by disclosing all of the limitations claimed in the '670 patent is not at issue here. Instead, plaintiff argues that defendants' evidence relating to when the Soverain

-15-

source code was written is either inadmissible hearsay or insufficient to satisfy the requirements of § 102(g)(2). Therefore, plaintiff contends, the Soverain source code cannot, as a matter of law, be considered prior art.

In analyzing whether the § 102(g)(2) invalidity bar applies, the Federal Circuit has explained that the party claiming invalidity bears the initial burden to establish a prior invention that was reduced to practice; once that showing is made, the burden of production shifts to the patentee to prove that the prior inventor suppressed or concealed the invention, although the ultimate burden of persuasion remains with the party invoking § 102(g). *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358 (Fed. Cir. 2006). Under the Federal Circuit's decision in *z4 Technologies, Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1352 (Fed. Cir. 2007), a prior invention is reduced to practice under § 102(g) where: (i) the inventor constructs an embodiment of invention; and (ii) it is determined that the invention would work for its intended purpose. On the current evidentiary record, defendants have presented admissible evidence that would allow a reasonable trier of fact to conclude, by clear and convincing evidence, that Soverain—at the time known as Open Market—invented and implemented the source code in the summer of 1994. Specifically, the documents produced by Soverain in the course of this litigation at defendants' request and the supplemental expert report by Ernest Johnson are evidence of Soverain's creation of source code that is essentially an embodiment of the invention claimed in the '780 Levergood patent. *See* Defs.' Opp'n Ex. 26 ¶¶ 19-29 (providing limitation-by-limitation comparison of the Soverain source code's elements to limitations claimed in the '780 patent).[20] Moreover, Johnson

_____

[20] It is worth noting that, contrary to plaintiff's assertion, Johnson does compare the Soverain source code to the '670 patent when he states that the features disclosed by the '780 patent "correspond to the elements disclosed in claims 1-10 and 14-26 of the ['670 patent]." *See*

avers that the invention was "put into practice with actual source code at least by July 14, 1994" and thus worked as intended. *Id.* ¶¶ 20, 29; *see also z4 Techs.*, 507 F.3d at 1352 (imposing reduction to practice requirement). This threshold evidentiary showing based on testimonial and documentary evidence is sufficient under *Flex-Rest* to defeat plaintiff's motion for summary judgment. Defendants have carried their initial burden of producing evidence that would allow a reasonable trier of fact to conclude, by clear and convincing evidence, that the Soverain source code was reduced to practice prior to October 6, 1994. And because plaintiff fails to identify undisputed evidence proving that Soverain suppressed or concealed the invention, there is no basis for entering summary judgment in favor of plaintiff on this issue. *See Flex-Rest*, 455 F.3d at 1358 (setting forth burden-shifting analysis).

In response, plaintiff relies primarily on the argument that the Soverain documents contain inadmissible hearsay, emphasizing in particular the July 14, 1994 timestamp that appears atop the source code documents. It follows, plaintiff argues, that its motion for summary judgment must be granted because the only other evidence supporting invalidity—namely, Johnson's expert report—is legally insufficient to prove invalidity under the Federal Circuit's corroboration requirement. *See Adenta*, 501 F.3d at 1371 (holding that a patent may not be invalidated solely on uncorroborated testimony). This argument is incorrect for two reasons. First, plaintiff's hearsay objection is obviated on summary judgment because the record contains an affidavit by Soverain's president and chief legal officer, Katherine A. Wolanyk, in which she avers that the Soverain documents meet the conditions of self-authentication and admissibility under Rules 803(6) and 902(11), Fed. R. Evid., commonly referred to as the business records

Defs.' Opp'n Ex. 26 ¶ 19 & n.1.

exception to the hearsay rule. *See* Defs.' Resp. to Pl.'s Supp. Prior Art Mem. Ex. 2. Second, even assuming that the Wolanyk affidavit is insufficient to establish the Soverain documents' admissibility, a hearsay objection on summary judgment does not preclude a court from considering hearsay evidence where, as here, the evidence may ultimately be admissible at trial. *See Cost Control Mktg. & Sales*, 64 F.3d at 926 n.8 (discussing Supreme Court's decision in *Celotex*). In this case, defendants at trial may present evidence curing any putative defect in the Wolanyk affidavit, thereby authenticating the Soverain documents as business records under Rules 803(6) and 902(11), Fed. R. Evid. Accordingly, the documents are appropriately considered on summary judgment and corroborate Johnson's expert conclusions relating to anticipation.

## D. Kristol, Holtman, and Behlendorf Proposals

Finally, defendants claim that the Kristol, Holtman, and Behlendorf proposals are prior art references under 35 U.S.C. § 102(a) that anticipate, and thus invalidate, the '670 patent. Section 102(a) states that "[a] person shall be entitled to a patent unless—(a) the invention was . . . described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a). Thus, defendants must submit evidence that would allow a reasonable trier of fact to conclude that the Kristol, Holtman, and Behlendorf proposals were published prior to the invention of the cookies technology, *i.e.*, prior to October 6, 1994.[21] Again, whether these documents actually anticipate the cookies technology by disclosing all of the limitations claimed in the '670 patent is not at issue here, as it is clearly

---

[21] As discussed *supra*, the date of invention in § 102 is distinct from the date of application for patent, and in this case the date of invention has been found by clear and convincing evidence to be prior to October 6, 1994.

disputed by the parties' experts;[22] rather, plaintiff seeks summary judgment solely on the ground that these proposals were not in the prior art as defined by § 102(a).

The undisputed summary judgment record pertaining to these three putative references contains no evidence that would allow a reasonable trier of fact to conclude, by clear and convincing evidence, that the Kristol, Holtman, and Behlendorf proposals were published prior to the invention of the cookies technology. In fact, the record evidence establishes the contrary: the Kristol document was published on August 25, 1995, the Holtman posting was published on August 11, 1995, and the Behlendorf posting was published on April 17, 1995. As these dates are well after the pre-October 6, 1994 invention of the cookies technology, plaintiff's motion for summary judgment with respect to defendants' § 102(a) anticipation defense must be granted.[23]

## III.

Although neither party has moved for summary judgment with respect to whether the prior art references rendered the cookies invention claimed in the '670 patent obvious pursuant to 35 U.S.C. § 103(a),[24] plaintiff, in its supplemental brief, argues that a determination on summary

---

[22] *See, e.g.,* Pl.'s Ex. 4 ¶¶ 65-67, 104-06, 140-41, 175-76 (Kristol proposal); *id.* ¶¶ 68-72, 107-10 (Holtman proposal); *id.* ¶¶ 81-84, 179 (Behlendorf proposal).

[23] It is worth noting that the 1995 Kristol, Holtman, and Behlendorf proposals also would not constitute prior art under § 102(b), as that provision requires "the invention [to be] patented or described in a printed publication in this or a foreign country . . . *more than one year prior to the date of the application for patent* in the United States," in this case prior to October 6, 1994. 35 U.S.C. § 102(b) (emphasis added).

[24] Section 103(a) states,

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to

judgment that certain prior art references are not within the prior art as defined by § 102 nonetheless affects the obviousness analysis under § 103. More precisely, plaintiff argues that where, as here, certain putative prior art references are found not to satisfy any § 102 subsection, these materials may not be used to prove the patent's invalidity for obviousness under § 103. In response, defendants contend that references that do not meet the conditions of § 102 may still be relevant to the obviousness analysis under § 103. Given this, it is appropriate in advance of trial to clarify whether and to what extent the Levergood patents and the Kristol, Holtman, and Behlendorf proposals—which do not qualify as prior art under certain subsections of § 102—may nonetheless be relevant to the § 103 obviousness analysis.

Under the Supreme Court's interpretation of § 103 in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966), a party arguing obviousness must establish the following predicate facts: (i) the scope and content of the prior art; (ii) the characteristics and understanding of an individual of ordinary skill in the art at the time of invention; (iii) the differences between the claimed invention and the prior art; and (iv) the evidence of secondary factors of non-obviousness. With respect to defining the scope and content of the prior art, the Federal Circuit has explained that "prior art," as used in § 103, refers specifically to (i) references that meet the requirements of § 102, and (ii) references that are, by a party's admission, within the prior art. *See Riverwood Int'l Corp. v. R. A. Jones & Co.*, 324 F.3d 1346, 1354-55 (Fed. Cir. 2003) (internal citations omitted). Indeed, the Federal Circuit has expressly held that

[t]he factual determination of the scope and content of the prior art, *see Graham*,

---

a person having ordinary skill in the art to which said subject matter pertains.
35 U.S.C. § 103(a).

383 U.S. at 17, is, of course, directed to prior art that meets the conditions of section 102. Section 102 describes prior art as what is published or otherwise known, including subject matter in public use or on sale.

*In re Dillon*, 919 F.2d 688, 715 (Fed. Cir. 1990).[25] Addressing this precise question, the *Chisum on Patents* treatise likewise concludes that "the court decisions appear to assume that 'prior art' is limited to the sources specified in Section 102—in particular Sections 102(a), (e), (f), and (g)." 2-5 Chisum on Patents § 5.03[3][g][i].[26] Accordingly, because here the Levergood patents and the Kristol, Holtman, and Behlendorf proposals do not qualify as prior art under § 102, defendants may not argue at trial that these references form part of the prior art under the first *Graham* factor.

Although the Levergood patents and the Kristol, Holtman, and Behlendorf proposals are excluded from the content of the prior art, these references may yet be relevant to a different factual predicate under *Graham*, namely the characteristics and understanding of an individual of ordinary skill in the art at the time of invention. In this regard, the Federal Circuit has long held that "evidence adduced in support of the § 102 defenses . . . can be probative on the issue of the level of skill in the pertinent art [under § 103] even if it be considered inadequate to establish the

[25] *See also OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1402 (Fed. Cir. 1997) (reasoning that the "prior art subsections" are contained in § 102); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) ("Before answering *Graham*'s 'content' inquiry [under the § 103 obviousness analysis], it must be known whether a patent or publication is in the prior art under 35 U.S.C. § 102,—a legal question."); *In re McKellin*, 529 F.2d 1324, 1327-28 (C.C.P.A. 1976) ("If it is found that the subject matter of the lost counts is prior art under section 102, it may be used alone or in combination with other references under section 103.").

[26] The treatise relies, in part, on the legislative history of § 103, which states that "prior art," as used in the provision, "'refers to the difference between the subject matter sought to be patented and *the prior art, meaning what was known before as described in section 102.*'" 2-5 Chisum on Patents § 5.03[3][g][i] (quoting S. Rep. No. 1979, 82d Cong., 2d Sess. 6 (1952); H.R. Rep. No. 1923, 82d Cong., 2d Sess. 7 (1952)) (emphasis in original).

existence of a § 102 defense."[27] Notably, in some circumstances the Federal Circuit has held that references not in the prior art under § 102 that are contemporaneous with the claimed invention may reflect the knowledge of one of ordinary skill in the art with respect to the obviousness inquiry.[28] This result is sensible, the Federal Circuit has explained, because certain references not "technically 'prior art'" may nonetheless be admissible to establish the level of one skilled in the art because the fact that other inventors independently suggested similar solutions to the same or analogous problems during the same time frame may be probative of obviousness. *See Newell Co., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 766 n.12 (Fed. Cir. 1988) (citing *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1580-81 (Fed. Cir. 1983)); *accord* 2-5 Chisum on Patents § 5.03[3][g][ii][A] (discussing *Newell* and pre-Federal Circuit decisions).[29] These

---

[27] *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1011-12 (Fed. Cir. 1983); *see also Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1337 (Fed. Cir. 2004) ("It has long been the law that the motivation to combine [requirement under § 103] need not be found in prior art references, but equally can be found in the knowledge generally available to one of ordinary skill in the art." (citation and quotation marks omitted)); *Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 154 (D. Mass. 2000) (holding, in light of finding that certain references were not prior art under § 102, that the references were "relevant only to the extent that they are probative on the issue of level of skill in the art . . . at the time of invention").

[28] *See Ecolochem*, 227 F.3d at 1379 ("The fact of near-simultaneous invention, though not determinative of statutory obviousness, is strong evidence of what constitutes the level of ordinary skill in the art." (citation and quotation marks omitted)); *see also* 2-5 Chisum on Patents § 5.03[3][g][ii][B] ("Courts give some weight to work that is not technically prior art . . . .").

[29] In arguing that references found not to be prior art under § 102 nonetheless have continuing relevance to the obviousness analysis, defendants cite the Supreme Court's decision in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). More precisely, defendants argue that under *KSR* "references that technically do not qualify as prior art can still be relevant to an invalidity analysis under 35 U.S.C. § 103 to demonstrate the knowledge of one of ordinary skill in the art." Defs.' Resp. to Pl.'s Supp. Prior Art Mem. at 13. Yet, the Supreme Court did not directly address the issue and it is unnecessary to address here whether *KSR* implicitly supports the proposition that references not in the prior art remain relevant to obviousness determinations, as Federal Circuit decisions directly and adequately address this issue.

principles, applied here, compel the conclusion that the Levergood patents and the Kristol, Holtman, and Behlendorf proposals—which technically are not prior art—are nonetheless relevant to proving the characteristics and understanding of an individual of ordinary skill in the art at the time of invention.

## IV.

In sum, plaintiff's motion for summary judgment on defendants' § 102 prior art invalidity defenses must be granted in part and denied in part. The motion must be granted in part with respect to the Levergood patents and the Kristol, Holtman, and Behlendorf proposals because the undisputed record establishes that the Levergood patent applications were not filed, and the Kristol, Holtman, and Behlendorf proposals were not published, before the cookies technology claimed in the '670 patent was invented, *i.e.*, ready for patenting. Put simply, defendants have not met their burden of presenting evidence on which a reasonable trier of fact could conclude, by clear and convincing evidence, that these purported references were in the prior art. Accordingly, these references cannot invalidate the '670 patent under an anticipation theory. Yet, plaintiff's motion must be denied in part with respect to the Freeman-Benson paper and the Soverain source code because record evidence—namely testimony and corroborating documents, which may be admissible at trial—would permit a reasonable trier of fact to conclude, by clear and convincing evidence, that these references were in the prior art. Notably, whether the Freeman-Benson paper and the Soverain source code actually anticipate the cookies technology by disclosing all of the limitations claimed in the '670 patent is an issue not reached or addressed here, and hence will be litigated at trial.

Although neither party moves for summary judgment with respect to defendants' § 103

prior art obviousness defense, the resolution of plaintiff's motion on defendants' § 102 prior art anticipation defense nonetheless implicates the obviousness analysis. Specifically, because the Levergood patents and the Kristol, Holtman, and Behlendorf proposals do not technically qualify as prior art under a § 102 subsection, they are excluded from the scope and content of the prior art for purposes of § 103. Yet, these references may still be admissible to show the knowledge of a person of ordinary skill in the art at the time of invention.

An appropriate Order shall issue.

Alexandria, Virginia
April 15, 2010

T. S. Ellis, III
United States District Judge